UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TAL PROPERTIES OF POMONA, LLC,
AVROHOM MANES,                                          17 cv 02928 (CS)

                Plaintiffs,          **FIRST AMENDED COMPLAINT**

vs.

VILLAGE OF POMONA, BRETT YAGEL,
MAYOR OF THE VILLAGE OF POMONA,
DOROTHY ULMAN, COUNSEL OF THE
VILLAGE OF POMONA,

                Defendants.
--------------------------------------------------------x

       By and through its counsel, Michael H. Sussman, Esq., plaintiff alleges as against defendants as follows:

### I.    PARTIES

1. Plaintiff TAL PROPERTIES OF POMONA, LLC is a limited liability company formed pursuant to the laws of the State of New York and conducting business in the County of Rockland, within this judicial district.

2. Plaintiff Avrohom Manes is the sole owner of TAL PROPERTIES OF POMONA, LLC, is an Orthodox Jew and resides in the County of Rockland.

3. Defendant Village of Pomona [hereinafter "the Village"] is a municipal corporation formed pursuant to the laws of the State of New York and conducting business in the County of Rockland, within this judicial district.

4. Defendant Brett Yagel [hereinafter "Yagel"] is the duly elected Mayor of the Village and, as and for the matters alleged herein, the final policy maker for defendant Village. He is sued both in his official and individual capacities.

5.  At all relevant times, defendant Doris Ulman [hereinafter "Ulman"] is and has been the duly appointed Village Attorney.  She is sued in her official and individual capacities.

6.  The complained of acts by defendants Yagel and Ullman were undertaken under color of state law and their efficacy forwarded by the cloak of state authority with which they acted.

## II.  JURISDICTION

7.  As plaintiffs allege that defendants discriminated against them based on religion in violation of the First and Fourteenth Amendments to the United States Constitution, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 1331 & 1343(3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III.  FACTUAL AVERMENTS

8.  In December 2015, plaintiffs purchased a residential home [hereinafter "the home" or "the property"] at 22 High Mountain Road within the Village of Pomona.

9.  In January 2016, plaintiffs made repairs to the property.

10.  In January 2016, the village building inspector, Louis Zummo [hereinafter "Zummo"] inspected the property on behalf of the village.

11.  Zummo concluded that plaintiff had completed the referenced repairs in accordance with applicable building codes and other applicable regulations and that a certificate of occupancy should issue.

12.  During his interactions with Zummo, plaintiff Manes met defendants Yagel and Ulman, both of whom knew he was Jewish

13.  Despite plaintiff's qualifying for the issuance of certificate of occupancy, defendants Yagel and Ullman directed Zummo to not issue the certificate of occupancy.

2

14. In so acting, defendants Yagel and Ulman made municipal policy with regard to the circumstances disallowing the issuance of such permits.

15. Defendants' direction contravened the village's Construction Code [chapter 47-10] which *required* issuance of a certificate of occupancy where, as here, the applicant complied with applicable code requirements.

16. In seeking to justify the village's refusal to issue the Certificate of Occupancy, defendant Mayor, acting by and through defendant Ullman, dubiously claimed that a prior owner of the property owed the Village $6,379.34 and demanded payment of said sum in exchange for issuance of the Certificate of Occupancy.

17. At no time did defendants claim that plaintiff had incurred said debt.

18. Village law and the village code do not permit denial of a certificate of occupancy because a prior property owner had failed to satisfy a debt the village had failed to record as a lien against the property by the time plaintiff purchased the same or at any time preceding its assertion of this as the basis for denial of a certificate of occupancy. This is particularly true where, as here, plaintiff purchased the property at a foreclosure sale.

19. Refusing to grant a certificate of occupancy on this ground not only finds no basis in law and it did not represent the village's general practice and was unprecedented in the village; however, it did represent the policy dictated by the village Mayor and attorney for these plaintiffs.

20. Indeed, out of animus for plaintiff based on the religion of plaintiff's principal, defendants Yagel and Ulman dictated this result to delay, block and prevent the plaintiff from gaining benefit from its purchase of the home.

3

21. Both Zummo and the village clerk have told plaintiff Manes that defendants Yagel and Ulman advised them to give plaintiff a hard time with anything he needed because they did not like him.

22. By comparison, defendants Yagel and Ulman failed to take any action to collect the sum of $6,379.34 from the home's prior owner, who was not Jewish, and, on behalf of the Village, permitted that same developer's bond to lapse without collection though the developer failed to develop and complete roads secured by said bond.

23. Through calendar year 2016, defendants Yagel, Ullman and the Village imposed other disparate and discriminatory conditions upon plaintiffs as they sought to sell the home, repeatedly concocting and then using false explanations for delays in issuance of the Certificate of Occupancy without which plaintiffs could not alienate their property.

24. In the summer 2016, again at defendant Yagel's direction and contrary to the treatment accorded similarly-sloped and neighboring properties owned by non-Jews, the village required plaintiffs to fulfill costly conditions before being permitted to grade out steep slopes on the property.

25. When plaintiff submitted the grading plan, the village engineer initially approved it.

26. However, under pressure from defendants Yagel and Ulman, the village engineer retracted his approval and imposed costly conditions upon plaintiffs.

27. This process prompted village building inspector Zummo to advise him that he would not participate in selective enforcement against the property and its owner.

28. Despite the building inspector's position, the village continued to insist that plaintiff complete costly requirements which other similarly-situated property owners did not have to satisfy, further delaying the alienation of the property and reducing its market value.

4

29.  After Plaintiffs agreed to comply with the costly requirements demanded by the village, it rejected his application and did not issue a permit for the grading work.

30.  Due to the incomplete nature of this work, plaintiff were not able to sell the property for the price they expected or recoup the profit anticipated from the property.

31. The village engineer's selective requirements explained in paras. 23-29 above, as dictated by defendants Yagel and Ulman, caused a substantial delay in selling plaintiffs' property and caused a significant decline in the selling price.

32.  In the late fall 2016, plaintiff entered into a contract for the property's sale.

33.  By this time, further demonstrating the baselessness of this claim which had delayed plaintiffs for months, defendant village had dropped any claim that plaintiffs owed fees incurred by a prior owner to it and gave plaintiffs a certificate of occupancy without any payment of the alleged debt.

34.  Following sale of the property, the Village of Pomona threatened to withdraw the certificate of occupancy if plaintiff failed to sign an agreement acknowledging, *inter alia*, that the road accessing the property was not a village road and that its maintenance was the sole responsibility of the property owner.

35. Requiring the signing of this agreement was again contrary to village practice, not authorized by any section of the village code and another *ultra vires* action undertaken by the village, as dictated by defendants Yagel and Ulman, to impede and complicate plaintiff's alienation of the property.

36. The delays in issuing the required certificate of occupancy and the discriminatory imposition of grading requirements caused plaintiffs to incur a substantial loss in the sales price for the property.

37.  But for said delays, the plaintiffs would have been able to sell the property in early 2016 and have use of the proceeds so realized for other profitable business opportunities.

38.  The religiously-motivated discrimination to which defendants subjected plaintiffs stymied plaintiffs from timely proceeding with other projects and caused actual economic loss.

39.  In engaging in the conduct set forth above, defendant Yagel repeatedly consulted with defendant Ulman, an attorney in good standing in the State of New York, shared with her his discriminatory design and enlisted her support in each of the methods he dictated to stymie and impeded plaintiffs' project.

40.  Though aware that the impositions placed upon plaintiff were contrary to Village law and not authorized by any provision of the local building or zoning codes, defendant Ulman fronted for defendant Yagel, knowingly implementing and defending his discriminatory dictates and impeding plaintiff's business venture to delay alienation of the plaintiffs' property.

41.  As a consequence of the treatment outlined above, defendants collectively caused plaintiff Manes emotional distress, anxiety and humiliation.

IV.  **CAUSES OF ACTION**

42. Plaintiffs incorporates paras. 1-41 as if fully re-written herein.

43. By intentionally engaging in selective enforcement against plaintiffs based on Manes' religion, defendants violated the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

44.  By intentionally imposing harsher conditions upon plaintiffs than it did upon other non-Jewish developers, defendants burdened the free exercise of the religion of plaintiff Manes in violation of the First Amendment to the United States Constitution as made actionable by 42 U.S.C. section 1983.

6

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court accepts jurisdiction in this

matter, empanels a jury to hear and decide all issues within its jurisdiction, awards to plaintiffs

compensatory damages as against all defendants, punitive damages as against defendants Yagel

and Ulman, all with pre-and post-judgment interest, and the reasonable attorneys' fees and costs

arising from the prosecution of this matter and enter any order necessary in the interests of

justice and equity.

Dated:  June 29, 2017

Respectfully submitted,

MICHAEL H. SUSSMAN ( 3457)

SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE
SUITE 3
GOSHEN, NY 10924
(845)-294-3991

Counsel for Plaintiffs