WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
Attorneys for Defendants
*Village of Pomona, Brett Yagel and Doris Ulman*
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
Attn: Janine A. Mastellone, Esq.
John B. Martin, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

TAL PROPERTIES OF POMONA, LLC,    :

                   Plaintiff,    :   Docket No. 7:17-cv-02928-CS

                            :

    -against-    :

VILLAGE OF POMONA, BRETT YAGEL, MAYOR OF :
THE VILLAGE OF POMONA,    :

               Defendants.    :

                            :
------------------------------------------------------------------- x

## MEMORANDUM OF LAW

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

6728977v.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

Introduction ........................................................................................................................... 1

Preliminary Statement ........................................................................................................... 1

Facts and Procedural History ................................................................................................. 2

          Procedural History: ....................................................................................................... 5

Argument ............................................................................................................................... 5

Motion to Dismiss Standard ................................................................................................... 5

Point I       Plaintiffs Cannot Seek Relief for the Village's Demand that They
               Reimburse the Debt to the Village Because they Never Paid the Debt ............ 6

Point II     Plaintiffs' Complaint Should be Dismissed for Failure to Allege Facts
               Establishing The Existence of a Similarly Situated Comparator ...................... 8

          1.     Plaintiffs' Allegations Fail to Establish the Similar Comparator and
               Disparate Treatment Elements of a Selective Enforcement Claim ........... 10

          2.     The Second Amended Complaint Fails to State a Cause of Action
               for Violation of the First Amendment ...................................................... 21

          3.     The Individual Defendants Are Entitled to Qualified Immunity,
               and the Village is Shielded from Liability under Monell ......................... 21

Conclusion ............................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Kent Village Hous. Co.,*
    123 F. Supp. 2d 91 (E.D.N.Y. 2000) .......................................................................... 9

*Amid v. Vill. of Old Brookville,*
    2013 U.S. Dist. LEXIS 129447 (E.D.N.Y. Feb. 7, 2013) ........................................ 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................. 6, 15

*AYDM Associates, LLC v. Town of Pamelia,*
    205 F. Supp. 3d 252 (N.D.N.Y. 2016) ..................................................................... 9

*Bolden v. Village of Monticello,*
    344 F. Supp. 2d 407 (S.D.N.Y. 2004) ..................................................................... 21

*Bowles v. New York City Transit Auth.,*
    2006 U.S. Dist. LEXIS 32914, (S.D.N.Y. May 23, 2006) ................................. 10, 21

*Brown v. Daikin Am., Inc.,*
    756 F.3d 219 (2d Cir. 2014) ..................................................................................... 20

*Bloomingburg Jewish Educ. Ctr v. Vill. of Bloomingburg,*
    111 F. Supp. 3d 459 (S.D.N.Y. 2015) ..................................................................... 21

*Gregory v. Inc. Vill. of Ctr. Island,*
    2016 U.S. Dist. LEXIS 98076 (E.D.N.Y. July 27, 2016) ....................................... 20

*County Of Nassau ex rel. Nassau County Planning Com v. Eagle Chase Assoc., Inc.,*
    144 Misc. 2d 641 (N.Y. Sup. Ct. Nassau County 1989) ........................................... 7

*Danahy v. Buscaglia,*
    134 F.3d 1185 (2d Cir. 1998) ................................................................................... 21

*Delbene v. Alesio,*
    2001 U.S. Dist. LEXIS 2150 (S.D.N.Y. Feb. 21, 2001) ............................................ 9

*Dilworth v. Goldberg,*
    914 F. Supp. 2d 433 (S.D.N.Y. 2012) ................................................................ 22, 23

*Hafez v. City of Schenectady,*
    894 F. Supp. 2d 207 (S.D.N.Y. 2012) ..................................................................... 20

*In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck,*
  2016 U.S. Dist. LEXIS 39496 (S.D.N.Y. March 25, 2016) (Seibel, J.) ................ 17, 18, 19, 20

*Khaled v. Dearborn Heights Police Dep't,*
  2017 U.S. App. LEXIS 19590 (6th Cir. Oct. 4, 2017) ................................................. 9

*Lieberman v. City of Rochester,*
  2011 U.S. Dist. LEXIS 46295 (S.D.N.Y. Apr. 29, 2011) ........................................ 9, 20

*Lisa's Party City, Inc. v. Town of Henrietta,*
  185 F.3d 12 (2d Cir. 1999) ....................................................................................... 8

*Malley v. Briggs,*
  475 U.S. 335 (1986) ................................................................................................. 22

*Martine's Service Center, Inc. v. Town of Wallkill,*
  554 Fed. Appx. 32 (2d Cir. 2014) ............................................................................ 8

*McFarlane v. Roberta,*
  891 F. Supp. 2d 275 (D. Conn. 2012) ..................................................................... 6

*Missere v. Gross,*
  826 F. Supp. 2d 542 (S.D.N.Y. 2011) ..................................................................... 8

*Monell v. New York City Dep't of Social Servs.,*
  436 U.S. 658 (1978) ................................................................................................. 22

*New York Pet Welfare Association v. City of New York,*
  143 F. Supp. 3d 50 (E.D.N.Y. 2015) .................................................................... 8, 11

*Nunez v. Hamdan,*
  2013 U.S. Dist. LEXIS 138625 (D. Utah Sept. 25, 2013) ..................................... 9, 20

*Oklahoma City v. Tuttle,*
  471 U.S. 808 (1985) ................................................................................................. 22

*Palacio v. City of New York,*
  2008 U.S. Dist. LEXIS 14891 (S.D.N.Y. Jan. 15, 2008) ..................................... 22, 23

*Palm Beach Strategic Income v. Stanley P. Salzman, P.C.,*
  2011 U.S. Dist. LEXIS 46867 (E.D.N.Y. May 2, 2011) ........................................ 16

*Panzella v. City of Newburgh,*
  231 F. Supp. 3d 1 (S.D.N.Y. 2017) ....................................................................... 8, 11

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ................................................................................................. 22

6728550v.1

*People United for Children, Inc. v. City of New York,*
    108 F. Supp. 2d 275 (S.D.N.Y. 2000) ........................................... 10

*Rheingold v. Harrison Town Police Dep't,*
    568 F. Supp. 2d 384 (S.D.N.Y. 2008) ........................................... 6

*Rodriguez v. Margotta,*
    2000 U.S. App. LEXIS 16260 (2d Cir. 2000) ................................ 9

*Ruston v. Town Bd. for the Town of Skaneateles,*
    610 F.3d 55 (2d Cir. 2010) .......................................................... 21

*Seiber v. United States,*
    364 F.3d. 1356 (Fed. Cir. 2004) ................................................... 7

*Snyder v. Pugliese,*
    144 Fed. Appx. 174 (2d Cir. 2005) .......................................... 8, 12

*Sponaugle v. First Union Mortg. Corp.,*
    40 Fed. Appx. 715 (3d Cir. 2002) ............................................. 6, 7

*Staples v. Gerry,*
    2015 U.S. Dist. LEXIS 86629 (D.N.H. May 11, 2015) ................. 9

*Tarantino v. City of Hornell,*
    615 F. Supp. 2d 102 (W.D.N.Y. 2009) ......................................... 9

*Witt v. Vill. of Mamaroneck,*
    992 F. Supp. 2d 350 (S.D.N.Y. 2014) .......................................... 6

**Statutes**

42 U.S.C § 1983 ................................................................................ 2, 4

Education Law § 7209 .................................................................... 14, 16

Education Law § 7209(1)-(2) ............................................................. 14

Title VII of the Civil Rights Act of 1964 ....................................... 20, 21

Village Code § 119-1 .......................................................................... 13

Village Code § 119-2(A) ..................................................................... 13

Village Code § 119-4 .......................................................................... 23

Village Code § 119-5(B)(1) ................................................................ 13

Village Code § 119-5(B)(2) ........................................................... 13, 16

6728550v.1

Village Code § 119-5(B)(3) .................................................................................. 13

Village Code § 119-5(B)(4) .................................................................................. 13

Village Code § 119-5(C) .............................................................................. 13, 16

Village Code § 119-6(B) ...................................................................................... 13

Village Code § 119-6(B)(2) .......................................................................... 13, 15

Village Code § 119-6(B)(3) .......................................................................... 13, 15

Village Code § 119-6A ......................................................................................... 13

Village Code § 119-7(C)(4) .......................................................................... 14, 15

Village Code § 119-7(C)(6) .......................................................................... 14, 15

Village Code § 119-7(D) ..................................................................................... 14

Village Code § 16-1 .............................................................................................. 23

Village Code § 20-1 .............................................................................................. 23

Village Code § 20-12 ........................................................................................... 23

**Rules**

F.R.C.P. 12(b)(1) ....................................................................................... 1, 6, 23

F.R.C.P. 12(b)(6) ........................................................................... 1, 5, 6, 18, 23

## Introduction

Defendants Village of Pomona, Brett Yagel ("Mayor Yagel"), as Mayor of the Village of Pomona, and Doris Ullman ("Ms. Ulman"),[1] as Village Attorney of the Village of Pomona (collectively "the Village" or defendants), respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6) and 12(b)(1), to dismiss the second amended complaint filed by plaintiffs TAL Properties of Pomona, LLC ("TAL"), and Avrohom Manes ("Mr. Manes") (collectively, "plaintiffs").[2]

## Preliminary Statement

This is a civil rights action in which plaintiffs allege that the defendants: (1) delayed the issuance of a certificate of occupancy for property that was allegedly owned by plaintiff TAL, and managed by plaintiff, Manes; (2) requested that plaintiffs pay approximately $6,300.00 in consulting fees, which ultimately were not paid by plaintiffs; (3) required plaintiffs to post a bond and test their grading materials in order to obtain a grading permit for their property without imposing similar requirements on other land owners who, unlike Mr. Manes, were not Jewish; and (4) requested that plaintiffs sign an agreement that was allegedly in exchange for keeping the certificate of occupancy and acknowledged that a road accessing plaintiffs' former property was not a Village road. Plaintiffs assert that, by undertaking these actions, the Village engaged in selective enforcement of the Village Code of the Village of Pomona ("Village Code") against the plaintiffs based on Mr. Manes's religion, thereby violating their rights under the

---

[1] The caption of the second amended complaint does not include Ms. Ulman as a defendant; however, the body of the complaint identifies her as such. Further, the second amended complaint misspells Ms. Ulman's name, adding a second "L." For purposes of this motion, Ms. Ulman will be identified by the proper spelling of her name. Plaintiffs should be required to amend the caption accordingly.

[2] The caption of the second amended complaint does not name Mr. Manes as a plaintiff. *Compare* First Amended Complaint. Mr. Manes, however, is described as a plaintiff in the body of the Second Amended Complaint. For purposes of this motion, he will be identified as a plaintiff, though TAL should still be required to properly amend the caption accordingly.

Equal Protection Clause of the Fourteenth Amendment. Plaintiffs further claim that the Village's actions infringed on Mr. Manes's right to the free exercise of religion under the Free Exercise Clause of the First Amendment. Based on these claims, plaintiffs seek damages pursuant to 42 U.S.C § 1983. However, as will be detailed below, plaintiffs' claims should be dismissed because they have no standing to complain of the debt that was never collected from them, have failed to allege the similar comparator element of a selective enforcement claim and have failed to allege any cognizable violation of Mr. Manes's free exercise rights.

### Facts and Procedural History

According to the second amended complaint, prior to December 2015, the owner of the residential property at 22 High Mountain Road, Village of Pomona, New York owed $6,379.34 in connection with that property to the Village. *See* Ex. A at ¶¶ 8, 16, 21.[3] The prior owner had taken out a bond to develop roads, but the bond lapsed and he did not complete roads secured by the bond. *See* Ex. A at ¶ 22. The Village did not collect the roughly $6,379.34 debt or collect on the bond from the owner, who was allegedly not Jewish. *See* Ex. A at ¶ 22.

In December 2015, plaintiff Manes, and/or plaintiff TAL, which is owned by Mr. Manes, bought the property at 22 High Mountain Road at a foreclosure sale. Mr. Manes is an Orthodox Jew, and alleges that he is known as such by Mayor Yagel and Ms. Ulman. *See* Ex. A at ¶¶ 2, 8, 12 18. In January 2016, plaintiffs made repairs to the property, and after an inspection, it is alleged that Village Building Inspector Louis Zummo ("Mr. Zummo") told plaintiffs that the repairs satisfied applicable codes and regulations and that a certificate of occupancy ("CO") should be issued. *See* Ex. A at ¶¶ 9-11. Nonetheless, it is alleged that during plaintiffs' meetings

---

[3] References designated "Ex." are to the exhibits annexed to the declaration of Janine A. Mastellone in support of defendants' motion to dismiss.

with Mr. Zummo, Mayor Yagel, "acting by and through" Ms. Ulman, told Mr. Zummo not to issue a CO because of the unpaid $6,379.34 debt related to the property. Ex. A at ¶¶ 12-13, 16.

In or about the summer of 2016, plaintiffs sought to "grade out steep slopes" in the back of the subject property, and plaintiffs' engineer and Village Engineer Joe Corless worked together to develop the first set of plans for that work, thereby indicating Mr. Corless's approval of that first set of plans. Ex. A at ¶¶ 23, 26. However, Mayor Yagel and Ms. Ulman allegedly directed Mr. Corless to "disavow" plaintiffs' plan. Ex. A at ¶¶ 23, 25, 27. Thus, Mr. Corless required that, to obtain a permit for the grading work, plaintiffs had to post a bond to insure that they did not damage their neighbor's property, demonstrate that the original surveyor of the land had authorized plaintiffs to use his work in support of their grading plan, and test the compressed fill that they used for grading. *See* Ex. A at ¶¶ 23, 25, 29-32, 36. The Village allegedly did not impose these conditions on "neighboring properties on High Mountain Road" that were "owned by non-Jews" and "similarly-sloped," and the conditions were "highly unusual in the village in like circumstances." Ex. A at ¶¶ 23, 29-32.

Plaintiffs "agreed to" comply with the Village's conditions, but the Village rejected his application for a permit for the grading work. Ex. A at ¶ 33. At some point, Mr. Zummo "advised the engineer [Mr. Corless] that he would no longer participate in selective enforcement against plaintiffs." Ex. A at ¶ 28. At another unspecified point, it is alleged that Mr. Zummo and the village clerk both told Mr. Manes that Mayor Yagel and Ms. Ulman "advised them to give plaintiff a hard time with anything they needed." Ex. A at ¶ 35.

Sometime prior to the fall of 2016, and despite plaintiffs' failure to pay the $6,379.34 debt, the Village issued a CO to plaintiffs without collecting the debt. *See* Ex. A at ¶ 38. In late fall of 2016, plaintiffs sold the subject property. *See* Ex. A at ¶¶ 37-39. After the sale, it is

alleged that the Village threatened to withdraw the CO unless plaintiffs signed an agreement acknowledging that the road accessing the subject property was not a Village road and that its maintenance was the sole responsibility of the property owner. *See* Ex. A at ¶¶ 39-40.

The second amended complaint raises two causes of action under 42 U.S.C. § 1983. *See* Ex. A at ¶ 48. In the first cause of action, plaintiffs assert that the Village's actions denied them their constitutional right to equal protection of the laws based on a selective enforcement theory. *See* Ex. A at ¶ 48. In the second cause of action, plaintiffs contend that the Village's actions violated Mr. Manes's right to the free exercise of religion under the First Amendment. *See* Ex. A at ¶ 49. Specifically, plaintiffs assert that the Village violated Village Construction Code chapter 47-10 when it did not immediately issue a CO in January 2016 because the repairs on the property complied with applicable regulations and the Village Code did not allow the Village to deny a CO based on the prior owner's failure to pay his debt. *See* Ex. A at ¶¶ 16-18. Plaintiffs further posit that the Village had no legal basis to demand payment of the $6,379.34 debt because the Village never recorded the debt as a lien and Mr. Manes did not incur the debt. *See* Ex. A at ¶¶ 17-18. In plaintiffs' view, when the Village denied them permission to complete grading work and delayed issuing a CO, plaintiffs were prevented from selling the property as expected in early 2016 at the anticipated level of profit. *See* Ex. A at ¶¶ 22, 36, 42. Plaintiffs additionally claim that the Village's demand for the signing of an agreement to accept responsibility for the road to the property was not authorized by the Village Code. *See* Ex. A at ¶ 40. Plaintiffs contend that, because the Village undertook the foregoing actions against Mr. Manes and not against allegedly similarly situated non-Jewish property owners, such as the prior owner of the subject property or the property owners on High Mountain Road, they engaged in selective enforcement of local laws in violation of the Equal Protection Clause. *See* Ex. A at ¶¶

4

21, 23, 43-46. Through the same actions, plaintiffs urge, the Villlage infringed on Mr. Manes's right to the free exercise of religion. *See* Ex. A at ¶ 49. As plaintiffs' see it, Mayor Yagel and Ms. Ulman cooperated with each other in taking these unlawful actions and shared the same discriminatory intent. *See* Ex. A at ¶ 44. And, plaintiffs aver, as a result of the Village's actions, Mr. Manes suffered emotional distress. *See* Ex. A at ¶ 46.

*Procedural History:*

On March 17, 2017, plaintiff TAL commenced this action in New York State Supreme Court, Rockland County, under index number 031215/2017, by filing a complaint against the Village, Mayor Yagel, Ms. Ullman and various other Village officials. *See* Ex. B. On April 21, 2017, defendants removed this action to the United States District Court for the Southern District of New York by filing a notice of removal. *See* Ex. C (D.E. #1). On July 5, 2017, plaintiffs TAL and Manes filed their first amended complaint in this Court against defendants. See Ex. D (D.E.# 10). At a pre-motion conference held on August 25, 2017, the Court granted plaintiffs leave to file a second amended complaint and defendants permission to move to dismiss or answer such second amended complaint. *See* D.E. for Minute Entry 8/25/17. On September 6, 2017, plaintiffs filed their second amended complaint. *See* Ex. A.

## Argument

### Motion to Dismiss Standard

Under F.R.C.P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a cause of action. *See* F.R.C.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). Although facts as alleged in the complaint should be accepted as true on a motion to dismiss, mere conclusions or formulaic recitations of the elements of a claim in the complaint are not presumed to be true and will not suffice to shield the complaint from dismiss. *See Iqbal*, 556 U.S. at 678; *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 360 n.10 (S.D.N.Y. 2014); *Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008). Indeed, under F.R.C.P. 12(b)(6), "a plaintiff armed with nothing more than conclusions" should not be allowed to proceed to discovery. *Iqbal*, 556 U.S. at 679. Finally, under F.R.C.P. 12(b)(1), the defendant's motion to dismiss should be granted if the facts alleged in the complaint fail to demonstrate that the plaintiff has standing to bring his or her claim. *See* F.R.C.P. 12(b)(1); *McFarlane v. Roberta*, 891 F. Supp. 2d 275, 282-283 (D. Conn. 2012).

## Point I

### Plaintiffs Cannot Seek Relief for the Village's Demand that They Reimburse the Debt to the Village Because they Never Paid the Debt

In the second amended complaint, plaintiffs raise a claim for damages arising from the Village's request that, in exchange for a CO, they reimburse the Village for $6,379.34 in outstanding fees on the subject property – what the second amended complaint labels a "debt." Ex. A at ¶¶ 16-19, wherefore clause. But, as a threshold matter, plaintiffs lack standing to raise that claim.

Where a plaintiff brings a claim for damages based on the defendants' efforts to collect a debt from the plaintiff, the plaintiff must show that he or she has paid the debt in order to establish a concrete injury-in-fact as a prerequisite to standing. *See generally Sponaugle v. First Union Mortg. Corp.*, 40 Fed. Appx. 715, 716 (3d Cir. 2002). In addition, a plaintiff's claim that a municipality delayed issuing a land-use approval is generally analyzed as a due process or takings claim, and under the relevant analysis, a plaintiff cannot maintain such a claim unless he

6

or she offers non-conclusory allegations demonstrating that the delay lasted for an extraordinary period of time and caused more than market fluctuations in the value of the property. *See Seiber v. United States*, 364 F.3d. 1356, 1364-65 (Fed. Cir. 2004); *see also County Of Nassau ex rel. Nassau County Planning Com v. Eagle Chase Assoc., Inc.*, 144 Misc. 2d 641, 642-644 (N.Y. Sup. Ct. Nassau County 1989).

Here, plaintiffs' claims for damages based on the Village's request for reimbursement of $6,379.34 and the resulting delay in the issuance of a CO are not viable. Regarding the demand for payment of the debt, plaintiffs have no standing to demand damages for the Village's efforts to collect that debt because they acknowledge that they never paid it and that they nonetheless received the CO. *See* Ex. A at ¶ 38; *Sponaugle*, 40 Fed. Appx. at 716. And, while plaintiffs try to skirt the limits of a claim of municipal delay by assailing the delay under the rubric of equal protection rather than due process, the fact remains that the delay did not harm them in a manner that could legally support damages. Indeed, the allegations in the second amended complaint reveal that the Village delayed the issuance of a certificate of occupancy by no more than about 9 months, *see* Ex. A at ¶¶ 10, 37-38, which does not constitute an extraordinary delay supporting a claim for damages, and plaintiffs set forth a mere conclusion that the delay caused a "significant decline in the sales price of the property," Ex. A at ¶ 36, which does not suffice as a pleading of concrete facts demonstrating more than market fluctuations in the sales price. *See Eagle Chase Assoc., Inc.*, 144 Misc. 2d at 642-644 (delay of about 7 months in processing subdivision application was not extraordinary and did not support takings claim). Accordingly, plaintiffs' claims stemming from the Village's demand for payment of the debt and delay in issuing a CO should be dismissed for lack of standing.

**Point II**

**Plaintiffs' Complaint Should be Dismissed for Failure to Allege Facts Establishing The Existence of a Similarly Situated Comparator**

To prevail on a Section 1983 claim alleging that a government agent has violated the Equal Protection Clause of the Fourteenth Amendment by selectively enforcing a facially neutral law against the plaintiff, the plaintiff must show that "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999), quoting *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994); *see Martine's Service Center, Inc. v. Town of Wallkill*, 554 Fed. Appx. 32, 35 (2d Cir. 2014).

Under the first prong of the analysis, the plaintiff must identify a comparator who was "similarly situated in all material respects" to the plaintiff and yet was treated differently by the defendant. *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (internal quotation marks omitted); *see Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017). In doing so, the plaintiff cannot rely on similarities between himself and a comparator that exist at "a high level of generality," but must instead show his or her similarity to the comparator in all material respects related to the defendant's conduct toward the plaintiff. *New York Pet Welfare Association v. City of New York*, 143 F. Supp. 3d 50, 64-65 (E.D.N.Y. 2015). Furthermore, because the plaintiff must demonstrate that the defendant's treatment of the plaintiff was "actually disparate" from his or her treatment of the comparator, *Snyder v. Pugliese*, 144 Fed. Appx. 174, 174 (2d Cir. 2005), "the [m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *AYDM Associates, LLC v. Town of Pamelia*, 205 F.

Supp. 3d 252, 265 (N.D.N.Y. 2016), quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980). *See Delbene v. Alesio*, 2001 U.S. Dist. LEXIS 2150, *31 (S.D.N.Y. Feb. 21, 2001). Rather, to establish actual disparate treatment, the plaintiff must show not only that the defendant did not enforce the pertinent law against the comparator, but also that the defendant was aware that the comparator, like the plaintiff, had violated the law. *See Tarantino v. City of Hornell*, 615 F. Supp. 2d 102, 114 (W.D.N.Y. 2009).

Under the second prong of the selective enforcement analysis, the plaintiff must demonstrate that the defendant's selective treatment of the plaintiff was motivated by religion or a comparable impermissible consideration. *See Rodriguez v. Margotta*, 2000 U.S. App. LEXIS 16260, *2 (2d Cir. 2000); *Adler v. Kent Village Hous. Co.*, 123 F. Supp. 2d 91, 97-99 (E.D.N.Y. 2000). Where, as here, the plaintiff claims that the defendant's enforcement of the pertinent regulation or law was motivated by the plaintiff's religion, the plaintiff must affirmatively demonstrate that similarly situated individuals of a different religion were not penalized for violating the relevant law and that the plaintiff, by contrast, was prosecuted for the pertinent offense based on his religion. *See Khaled v. Dearborn Heights Police Dep't*, 2017 U.S. App. LEXIS 19590, *15 (6th Cir. Oct. 4, 2017); *Staples v. Gerry*, 2015 U.S. Dist. LEXIS 86629, *41-42 (D.N.H. May 11, 2015). In this context, the defendant's use of a stray comment demeaning the plaintiff, while unfortunate, does not in itself suffice to show that the defendant selectively enforced the law against the plaintiff based on animus or the plaintiff's group membership. *See, e.g., Lieberman v. City of Rochester*, 2011 U.S. Dist. LEXIS 46295, *9-14 (S.D.N.Y. Apr. 29, 2011); *Nunez v. Hamdan*, 2013 U.S. Dist. LEXIS 138625, *19-20 (D. Utah Sept. 25, 2013).

Finally, where the plaintiff has asserted a claim under the Free Exercise Clause arising from the government's alleged disparate treatment of the plaintiff based on his or her religion,

9

the plaintiff's claim should be analyzed under the same standards as a religious discrimination claim under the Equal Protection Clause. *Bowles v. New York City Transit Auth.*, 2006 U.S. Dist. LEXIS 32914, *54-57 (S.D.N.Y. May 23, 2006). Therefore, if the plaintiff claims religiously-motivated selective enforcement, the plaintiff's failure to allege facts establishing the similar comparator and discriminatory motive elements described above compels dismissal of the plaintiff's claim, regardless of whether it is framed as an equal protection or free exercise claim. *See People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 297-299 (S.D.N.Y. 2000) (the lack of factual allegations in the complaint sufficiently demonstrating disparate treatment of similarly situated offenders of different religions required dismissal of both equal protection and free exercise claims).

1. *Plaintiffs' Allegations Fail to Establish the Similar Comparator and Disparate Treatment Elements of a Selective Enforcement Claim*

Here, plaintiffs' selective enforcement claim should be dismissed because plaintiffs have failed to set forth non-conclusory allegations of fact that, if true, would demonstrate that there was a similarly situated, non-Jewish property owner in the Village who received more favorable treatment from the Village than plaintiffs. Specifically, in the second amended complaint, plaintiffs identify two putative comparators: (1) the prior owner of the subject property at 22 High Mountain Road; and (2) unknown owners of unidentified properties that are on High Mountain Road and therefore "neighboring" the subject property. Ex. A at ¶¶ 21, 23. But those alleged comparators are not similarly situated in all material respects relating to the Village's conduct.

Plaintiffs claim that the prior owner was similarly situated to them because both were alleged to owe a $6,379.34 debt to the Village and yet, when plaintiffs applied for a CO, the Village demanded that only plaintiffs, not the prior owner, pay the debt. However, in relation to

10

the Village's CO requirements and debt collection activities, the prior owner differed considerably from plaintiffs.

Significantly, the complaint does not allege that the prior owner ever applied for a CO, much less that he applied for and received one after he had incurred the $6,379.34 debt. *See* Ex. A at ¶¶ 16, 21. Consequently, as far as the complaint indicates, the Village had no occasion to require the prior owner to pay the debt in exchange for a CO because he never applied for one. By contrast, the complaint alleges that plaintiffs did apply for a CO, and that they did so after the debt had been incurred and become past due. *See* Ex. A at ¶¶ 13, 16, 18. As a result, plaintiffs and the prior owner were quite dissimilar because plaintiffs were applicants for a CO on a property subject to an unpaid debt and the prior owner was not an applicant for a CO at all, much less at a time when the debt had been incurred. Therefore, when the Village required plaintiffs to pay the debt in order to obtain the CO, the Village did not treat plaintiffs differently than any similarly situated property owner who sought a CO on a property involving an unpaid debt. *See* Ex. A at ¶¶ 16-19. Of course, regarding the matter of actual collection of debt, the Village treated plaintiffs and the prior owner identically: the Village ultimately did not collect the debt from either of them. *See* Ex. A at ¶¶ 21, 38. Accordingly, plaintiffs and the prior owner were not similarly situated or subject to disparate treatment in most material respects. *See New York Pet Welfare Association*, 143 F. Supp. 3d at 64-65; *Panzella*, 231 F. Supp. 3d at 8-10. And, at any rate, as will be explained hereinafter, the Village Code authorized the Village to seek reimbursement for the debt from any owner of the property as a condition of obtaining a CO.

In addition, the second amended complaint fails to allege facts showing that other property owners on High Mountain Road were similarly situated to plaintiffs and yet received more favorable treatment than plaintiffs pursuant to the Village's efforts to enforce the grading

11

requirements of the Village Code. In that regard, the complaint accuses the Village of imposing unique burdens on plaintiffs compared to neighboring property owners because the Village required only plaintiffs to post a bond, verify their authorization to use a surveyor's drawings and test fill in order to obtain a permit to perform grading work. *See* Ex. A at ¶¶ 30-32. However, plaintiffs fail to allege disparate treatment with respect to enforcement of permit requirements because they do not allege that any neighboring properties ever applied for a permit or received one. Specifically, while plaintiffs offer the mere conclusions that there were "similarly-situated property owners" who "did not have to satisfy" these requirements or received "contrary . . . treatment" regarding their ability to grade their properties, they do not allege, or even claim, that other property owners *actually applied for* grading permits from the Village and received them without meeting the requirements imposed on plaintiffs. Ex. A at ¶¶ 23, 29-32. Thus, plaintiffs fail to allege that the Village granted such permits to neighboring properties on more favorable terms than those offered to plaintiffs, and their selective enforcement claim fails for lack of factual allegations supporting the disparate treatment element of that claim. *See generally Snyder*, 144 Fed. Appx. at 174.

Furthermore, the allegations in the second amended complaint fail to establish that other property owners on High Mountain Road were similarly situated in all material respects regarding the Village Code's requirements for a grading permit. Significantly, the availability of a grading permit under the Village Code depends on a variety of characteristics of a property and the conduct of the property's owner, and plaintiffs fail to allege facts showing that other property owners on High Mountain Road are similarly situated to them with respect to those critical matters.

For steep-sloped properties, the Village Code requires any development proposal to

6728550v.1

account for three different categories of slope on the property: moderately steep slope (between 15% and 25% topographical gradient); very steep slope (between 25% and 35% topographical gradient); and extremely steep slope (50% slope and above). *See* Village Code § 119-1. To obtain approval to do any work on a steep-sloped property, the property owner must submit an application for site plan approval to the Village Planning Board. *See* Village Code § 119-2(A). An application for approval of any such plan must include a written narrative about the proposal and a site development plan prepared by a qualified architect, engineer or other qualified professional, which plan must include detailed topographical information, a soil erosion control plan, locations of each category of slope on the property, a landscape plan prepared by an architect and landscaping data. *See* Village Code §§ 119-5(B)(1); 119-5(B)(2).

The application must also include payment of all applicable fees and a list of necessary permits. *See* Village Code §§ 119-5(B)(3); 119-5(B)(4). The applicable fees include an application fee, an inspection fee, and fees or reimbursements for consultants working with the Planning Board. *See* Village Code §§ 119-6A; 119-6(B). "A building permit or certificate of occupancy or use shall not issue unless all application fees and consultants' fees charged in connection with the application have been paid to the Village," and the inspection fees must be paid regardless of whether the inspection occurs during the pendency of the application or after approval. Village Code §§ 119-6(B)(2); 119-6(B)(3). The Planning Board may also require the applicant to submit detailed information about the existing soil on the property and reports about the quality of the soil and proposed fill. *See* Village Code § 119-5(C). During the approval process, the Planning Board must require the posting of a letter of credit to cover damages resulting from the work, and it must require different grading angles and practices depending on the degree of slope on the property. *See* Village Code §§ 119-7(C)(4); 119-7(C)(6). Then, the

6728550v.1

applicant must proceed through a public hearing process. *See* Village Code § 119-7(D). Additionally, the applicant must meet the requirements of any other applicable law aside from the Village Code, such as Education Law § 7209, which forbids any municipality to approve plans or drawings of a professional land surveyor that are not stamped with proof that they are authorized and have not been altered. *See* Education Law §§ 7209(1)-(2).

Here, plaintiffs fail to allege relevant facts necessary to determine that they are similarly situated to other sloped property owners under the aforementioned requirements for approval of grading work, including: (1) whether plaintiffs and/or the owners of other properties on High Mountain Road applied to the Planning Board to perform grading work; (2) whether plaintiffs and/or the owners of other properties on High Mountain Road submitted the requisite written narrative, application fees and erosion control plans in support of any such application; (3) whether the other property owners submitted surveyors' drawings in support of any application, so as to trigger the requirement of a stamp proving their authorization to use such drawings and the absence of alteration to those drawings; (4) whether plaintiffs' property and the other properties on High Mountain Road had the same specific mix of slope types which would have to be addressed during the application process; and (5) whether the amounts and angles of fill involved in any fill projects prepared by plaintiffs or other property owners were the same. Far from alleging these facts that would be necessary to support an inference that other property owners are similarly situated to them in all material respects, plaintiffs merely allege that there are property owners on High Mountain Road whose properties are "similarly-sloped" and who were not asked to meet any of the requirements that the Village asked plaintiffs to meet. *See* Ex. A at ¶¶ 23, 29-32. Tellingly, plaintiffs allege only that they met with the Village Engineer about their plan to perform grading work and do not indicate that they submitted their plan to the

Planning Board as required by the Village Code, and plaintiffs do not allege facts showing that the other property owners similarly failed to submit an application to the Planning Board and to fulfill the legal requirements for such an application. *See* Ex. A at ¶¶ 24-27. In fact, plaintiffs fail to identify any particular neighboring property by address, specific location or name of owner, thereby depriving the Village of notice of even basic details of their claims. Clearly, plaintiffs' mere conclusions that other property owners are "similarly situated," had "similarly sloped" properties or undertook "similar projects" do not meet *Iqbal*'s requirement of alleging facts establishing that plaintiffs and these other unidentified property owners are similarly situated in all material respects for purposes of the Village's grading approval process.

It should be noted that the Village Code provisions cited above also disprove a major premise of plaintiffs' position here, namely that the Village Code did not authorize the Village to enforce the disputed requirements against plaintiffs. In reality, the facts alleged in the complaint demonstrate that the Village acted properly in all respects. For example, the Village Code forbids the issuance of a CO unless all outstanding fees and reimbursements owed to the Village have been paid, regardless of whether the right to such reimbursement is secured by a lien, and here it is alleged that there was an unpaid reimbursement and fee of $6,379.34 owed to the Village in connection with the subject property, requiring denial of a CO. *See* Village Code §§ 119-6(B)(2); 119-6(B)(3). Additionally, the Village Code requires an applicant for grading approval to submit a letter of credit – basically, a bond -- to insure against damage to neighboring properties, and here, as alleged in the complaint, the Village properly demanded such a bond or letter of credit from plaintiffs. *See* Village Code §§ 119-7(C)(4); 119-7(C)(6). The Village Code also empowers the Village to demand an erosion control plan and detailed information about soil and fill involved in the proposed grading work, and here the Village

allegedly required plaintiffs to test fill and submit the results, as it was entitled to do. *See* Village Code §§ 119-5(B)(2); 119-5(C). Moreover, the Education Law forbids a municipality to approve any development project supported by a surveyor's drawing that do not include proof of authorized use, and here the complaint alleges facts showing that the Village properly demanded that plaintiffs submit proof of their authorization to use the surveyor's drawings which they submitted. *See* Education Law § 7209; *see generally* Ex. A at ¶¶ 16-19, 21, 23, 29-32, 38. In fact, given that plaintiffs allege that they submitted their application to the Village Engineer rather than the Planning Board, they made no effort to satisfy any of the relevant requirements for grading approval via the proper process, and therefore the Village was well within its rights to deny them permission to grade their property. Since there is no allegation that other similar property owners submitted an application to grade steep slopes exclusively to the Town Engineer (not the Planning Board) and obtained approval to without meeting the aforementioned requirements, plaintiffs' selective enforcement claim fails as a matter of law.[4]

Furthermore, while plaintiffs complain of the Village's request that they execute an agreement acknowledging responsibility for maintenance of the roads connecting to their property, plaintiffs fail to identify any similarly situated property owner who also owned property connected to the same type of road and did not have to sign such an agreement to get a CO. *See* Ex. A at ¶¶ 39-40. Hence, no selective enforcement claim can be maintained on this

---

[4]  Moreover, while plaintiffs allege in the second amended complaint that the Village offered no basis for its claim that plaintiffs owed the $6,379.34 debt, this allegation should be disregarded because it directly contradicts plaintiffs' averments in the original complaint, wherein they claimed that the Village showed them documents supporting its claim for collection of the debt and that plaintiffs simply believed, without any apparent basis, that the documents were forged. *See* Ex. A at ¶¶ 16-17; Ex. B at ¶ 45; *see also  Palm Beach Strategic Income v. Stanley P. Salzman, P.C.*, 2011 U.S. Dist. LEXIS 46867, *13-22 (E.D.N.Y. May 2, 2011).

6728550v.1

basis.[5]

This Court's decision in *In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 2016 U.S. Dist. LEXIS 39496 (S.D.N.Y. March 25, 2016) (Seibel, J.), illustrates the inadequacy of plaintiffs' allegations. In *Hampshire Recreation*, the plaintiffs owned and operated a country club on a 106-acre parcel, and the plaintiffs sought to re-zone their property in order to build a 121-unit residential building on part of the property. *See Hampshire Recreation*, 2016 U.S. Dist. LEXIS 39496, at *3-4. In response, a coalition of local residents, who opposed the development, filed complaints about noise violations, traffic violations and the holding of improper non-member events without a permit against the plaintiffs with the defendant village, and the village brought legal proceedings against the plaintiffs based on the lack of a permit. *See id.* at *4-6. The plaintiffs sought a special permit from the ZBA for non-member events and also petitioned for re-zoning of their property to accommodate their planned development, resulting in a lengthy series of proceedings, hearings and requests for the special permit and re-zoning. *See id.* at *6-11. The plaintiffs received only a probationary special permit. *See id.* at *8. Eventually, the plaintiffs sued the village, asserting that the village selectively enforced its permitting and zoning requirements against the plaintiffs. *See id.* at 16-17. In support of their claim, the plaintiffs identified three other specifically named clubs as similarly situated comparators who, unlike the plaintiffs, received a special permit from the village. To demonstrate the similarity of these clubs, the plaintiffs alleged that, like the plaintiffs' club: they were located along the same specific area adjacent to single-family residential neighborhoods; they held non-member events of similar size and character; and they

---

[5] Notably, plaintiffs do not allege that they actually signed the agreement or that, in the time between the Village's request for the execution of the agreement and the service of the second amended complaint, the Village revoked or attempted to revoke their CO as a consequence of their failure to sign the agreement. *See* Ex. A at ¶¶ 39-40.

held the events in facilities located in the same zone as a part of the plaintiffs' property. *See id.* at *20-21.

On the village's motion in *Hampshire Recreation*, this Court dismissed the complaint under F.R.C.P. 12(b)(6), finding that the plaintiffs' complaint failed to include sufficient factual allegations to establish the similar comparator element of their selective enforcement claim. *See id.* at 20-25. In particular, this Court observed that the putative competitors' property fell entirely within a zone that allowed non-member events, whereas only part of the plaintiffs' property fell within that zone, creating a relevant distinction between them. *See id.* at 20-21. And, the Court also ruled that, because the plaintiffs did not allege that the other clubs had received the same number of citations or complaints from neighbors and others, the plaintiffs had not submitted sufficient factual allegations to show that the other clubs were truly similarly situated when they applied for special permits. *See id.* at *21-22, citing *Amid v. Vill. of Old Brookville*, 2013 U.S. Dist. LEXIS 129447, at *6-7 (E.D.N.Y. Feb. 7, 2013) ("[W]here a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged," including specific characteristics or traits permitting court to find similarity plausible). Hence, the Court stated that the plaintiffs' complaint did "not identify salient characteristics of the alleged comparators that are necessary to plausibly allege the necessary degree of similarity." *Hampshire Recreation*, 2016 U.S. Dist. LEXIS 39496, at *23. Moreover, the Court determined that the plaintiffs had failed to satisfy the disparate treatment element of their claim, as another club, like the plaintiffs, also received a probationary permit. *See id.* at *23.

In *Hampshire Recreation*, the Court also found that the plaintiffs and another club were

not similarly situated in relation to the village's repeated citations of the plaintiffs for holding noisy non-member events because, while the plaintiffs asserted that the other club held noisy non-member events as well, they failed to allege that the other club, like the plaintiffs, lacked the requisite permit to hold such events. *See id.* at *26-27. Additionally, in the Court's view, the village's efforts to enforce its laws against the plaintiffs based on their acknowledged violations of those laws established that the village had no discriminatory motive for its actions. *See id.* at *24-27. Accordingly, the Court dismissed the complaint for failure to state a cause of action. *See id.* at *52. Subsequently, the Second Circuit affirmed this Court's decision. *See id.*, 2016 U.S. App. LEXIS 20650 (2d Cir. Nov. 18, 2016).

Here, plaintiffs' allegations are even more deficient than the allegations in *Hampshire Recreation*. Indeed, at least the plaintiffs in *Hampshire Recreation* identified, by name and address, owners and properties that were purportedly similar to the plaintiffs and their property. More to the point, just as the plaintiffs in *Hampshire Recreation* alleged that other property owners should have been subject to the same permitting rules and enforcement actions because those owners had properties in the same area, used those properties for the same purpose and held the same types of events, plaintiffs here make similar -- though more conclusory -- allegations that unidentified individuals with land in the same general area and similarly sloping properties were not subjected to the same restrictions as plaintiffs. Furthermore, like the plaintiffs in *Hampshire Recreation*, plaintiffs here do not allege whether the purported comparators have a history of land-use violations and permit applications which is comparable to plaintiffs'. And, just as the plaintiffs in *Hampshire Recreation* acknowledged a relevant difference between themselves and other property owners -- not all of the plaintiffs' property shared the same zoning as the comparators -- plaintiffs' allegations here indicate that there are

relevant differences between themselves and the putative comparators because plaintiffs erroneously applied only to the Town Engineer for permission to grade the slopes and apparently had unfinished roads connecting to their property, which necessitated arrangements for maintenance. Significantly, too, plaintiffs here, like the plaintiffs in *Hampshire Recreation*, cannot satisfy the discriminatory intent element of a selective enforcement claim because their own allegations show that the Village simply engaged in neutral enforcement of the text of applicable local laws. Moreover, like the plaintiffs in *Hampshire Recreation*, plaintiffs here received equal treatment to their comparators in some respects; in *Hampshire Recreation*, the plaintiffs and a comparator were both issued probationary permits, and here, plaintiffs and the prior owner of the subject property were both spared from having to pay the $6,379.34 reimbursement.[6] Therefore, here, as in *Hampshire Recreation*, the Court should dismiss plaintiffs' selective enforcement claim. *See id.* at *20-27, 52; *see also Amid*, 2013 U.S. Dist. LEXIS 129447, at *16-19; *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 225-227 (S.D.N.Y. 2012); *cf. Gregory v. Inc. Vill. of Ctr. Island*, 2016 U.S. Dist. LEXIS 98076, *18-22 (E.D.N.Y. July 27, 2016).[7]

---

[6] In this respect, Mr. Zummo's alleged statement that he would not participate in selective enforcement of the Village Code against plaintiffs, *see* Ex. A at ¶ 28, and the secondhand report that Mayor Yagel and Ms. Ulman told Village employees to "give plaintiff a hard time," Ex. A at ¶ 35, add nothing to plaintiffs' baseless claims. As noted above, stray comments about a plaintiff, such as the comments here, are legally insufficient to support a selective enforcement claim, and they do not show that any selective enforcement actually occurred, notwithstanding Mr. Zummo's purported opinion. *See, e.g., Lieberman*, 2011 U.S. Dist. LEXIS 46295, at *9-14; *Nunez*, 2013 U.S. Dist. LEXIS 138625, at *19-20.

6. *Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014), which pre-dates the Second Circuit's affirmance of this Court's decision in *Hampshire Recreation*, is not to the contrary. In Brown, the issue was whether, under Title VII of the Civil Rights Act of 1964, the plaintiff had set forth sufficient allegations to support an inference of racial discrimination based on alleged disparate treatment of Japanese workers who were indisputably similarly situated to the plaintiff, save for the fact that they had rotational shifts. See Brown, 756 F.3d at 228-231. Relying on the rule in title VII cases that a plaintiff is similarly situated for purposes of that statute as long as they are subject to the same standards of job performance and discipline, the Second Circuit concluded that the plaintiff did not have to allege detailed facts about job functions, qualifications and pay to demonstrate that he was similarly situated to other employees, for those details were not required to satisfy the requirements of title VII jurisprudence. See id. By contrast, here, plaintiffs raise an equal protection claim, not a title VII claim. And, although both types of claims require some showing that the plaintiff is similarly situated to a comparator, the Second Circuit applies the more

2. *The Second Amended Complaint Fails to State a Cause of Action for Violation of the First Amendment*

In addition, plaintiffs' free exercise claim should also be dismissed. Because plaintiffs rely on the same allegations of discrimination described above to support their free exercise claim and do not allege that the Village substantially burdened any particular religious observance, such as a worship service or religious land use, their free exercise claim should be analyzed under the same standards as their selective enforcement claim. *See Bowles*, 2006 U.S. Dist. LEXIS 32914, at *54-57; *cf. Bloomingburg Jewish Educ. Ctr v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 484-485 (S.D.N.Y. 2015). Therefore, plaintiffs' free exercise claim must fall with their selective enforcement claim.

3. *The Individual Defendants Are Entitled to Qualified Immunity, and the Village is Shielded from Liability under Monell*

Even if there were any constitutional violation here, Mayor Yagel and Ms. Ulman would be entitled to qualified immunity. "Qualified immunity shields a public official from civil liability when his conduct 'does not violate a clearly established statutory or constitutional right.'" *Bolden v. Village of Monticello*, 344 F. Supp.2d 407, 410 (S.D.N.Y. 2004), quoting *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). And, "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir. 1998) (internal quotation marks and citation omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, even if Mayor Yagel and Ms. Ulman's

---

relaxed "same discipline and performance" rule only to title VII claims, not to equal protection claims like the one raised by plaintiffs here. In fact, the Second Circuit has emphasized that, in the equal protection context, particularized factual allegations are necessary, and plaintiffs here have failed to meet that requirement. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58-60 (2d Cir. 2010).

actions had been technically unconstitutional – they were not – the circumstances alleged in the second amended complaint made it objectively reasonable for them to believe that they were not violating plaintiffs' rights. As discussed above, Mayor Yagel and Ms. Ulman were engaged in proper, fact-specific enforcement of the Village Code, which has numerous technical provisions, and it was reasonable for them to believe that plaintiffs had violated that Code and hence were obligated to pay the debt on the property, submit their proposal for grading work to the Planning Board, and meet the legal requirements for such work. Consequently, Mayor Yagel and Ms. Ulman deserve qualified immunity.

Finally, the Village cannot be vicariously liable for the alleged unconstitutional actions of Mayor Yagel or Ms. Ulman. To prevail on a Section 1983 claim against a municipality, a plaintiff must establish that his injuries were directly caused by a municipal policy, custom or practice, or else the plaintiff must demonstrate that the defendant was a policy maker for the municipality. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 692-94 (1978); *see Dilworth v. Goldberg,* 914 F. Supp. 2d 433, 452-459 (S.D.N.Y. 2012). A municipality cannot be liable under 42 U.S.C. §1983 under the theory of *respondeat superior. Id.* at 690-91; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 (1986). A single incident, complained of by the plaintiff, does not constitute a "policy" for purposes of liability under Section 1983. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-824 (1985); *Palacio v. City of New York,* 2008 U.S. Dist. LEXIS 14891, at *13 (S.D.N.Y. Jan. 15, 2008).

Here, although plaintiffs set forth the mere conclusion that Mayor Yagel's and Ms. Ulman's actions in delaying the issuance of a CO and enforcing requirements for grading work constituted the Village's official policy, they acknowledge that this conduct was unusual. *See* Ex. A at ¶¶ 14, 19, 30. And, at bottom, plaintiffs identify just two isolated instances of purported

unconstitutional misconduct – the refusal to immediately issue a CO and the demand for compliance with grading requirements of the Village Code – which cannot constitute a policy or custom of constitutional violations rendering the Village liable. *See* Ex. A at ¶¶ 13-15, 29-32; *see generally Palacio,* 2008 U.S. Dist. LEXIS 14891, at *13. Furthermore, because the Board of Trustees, not the Mayor, sets policy for the Village and neither the Mayor nor the Town Attorney has any direct role in setting land use policy, Mayor Yagel and Ms. Ulman did not act as municipal policy makers in delaying plaintiffs' bid for land-use approval and hence could not create liability for the Village in this context. *See* Village Code §§ 16-1 (Board approves legislation); 20-1 (Mayor cannot fire officials without Board approval); 20-12; 119-4 (Engineer or Planning Board makes land use decision depending on circumstances); *see generally Dilworth*, 914 F. Supp. 2d 433, 452-459.

In sum, plaintiffs' second amended complaint should be dismissed for alleging facts that fail to state a cause of action, fail to demonstrate the existence of a relevant municipal policy responsible for their alleged injury and fail to show that the individual defendants are not qualifiedly immune.

### Conclusion

For the reasons stated above, this Court should grant defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), and dismiss the second amended complaint in its entirety.

Dated:    White Plains, New York
             October 16, 2017

Respectfully submitted,

6728550v.1

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants_____

Janine A. Mastellone
John B. Martin

1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000
Our  File No.  00295.12564

6728550v.1