WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
Attorneys for Defendants
*Village of Pomona, Brett Yagel and Doris Ulman*
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
Attn:  Janine A. Mastellone, Esq.
    John B. Martin, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
TAL PROPERTIES OF POMONA, LLC,

              Plaintiff,                Docket No. 7:17-cv-02928-CS

    -against-

VILLAGE OF POMONA, BRETT YAGEL, MAYOR OF
THE VILLAGE OF POMONA,

              Defendants.

-------------------------------------------------------------------- x

## REPLY MEMORANDUM OF LAW

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

6797113v.1

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| Introduction | | 1 |
| Point I | Plaintiffs Cannot Obtain Relief for the Village's Alleged Demand for Reimbursement of Unpaid Fees | 1 |
| Point II | Plaintiffs' Bare Legal Conclusions Cannot Satisfy Iqbal's Requirement that They Allege Concrete Facts Establishing the Existence of Similarly Situated Comparators Who Received More Favorable Treatment from the Village | 2 |
| Point III | Plaintiffs Plaintiffs Have Not Alleged Sufficient Facts to Sustain a Monell Claim or Defeat Immunity | 8 |
| Conclusion | | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*545 Halsey Lane Props., LLC v. Town of Southampton,*
2015 U.S. Dist. LEXIS 45856 (E.D.N.Y. April 8, 2015).................................................. 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................... 3, 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................ 5

*Francis v. Giacomelli,*
588 F.3d 186 (4th Cir. 2009) .......................................................................................... 4

*Gerardi v. Huntington Union Free Sch. Dist.,*
124 F. Supp. 3d 206 (E.D.N.Y. 2015)........................................................................... 10

*Guillory v. Ellis,*
2013 U.S. Dist. LEXIS 69183 (N.D.N.Y. Apr. 3, 2013) ................................................ 6

*Hodge v. City of Long Beach,*
2010 U.S. Dist. LEXIS 138344 (E.D.N.Y. Dec. 28, 2010)............................................. 6

*County Of Nassau ex rel. Nassau County Planning Com v. Eagle Chase Assoc.,*
144 Misc. 2d 641 (Sup. Ct. Nassau County 1989)......................................................... 2

*Crisante v. Coats,*
2012 U.S. Dist. LEXIS 61209 (Middle Dist. Florida May 2, 2012) .............................. 6

*Freeman v. Town of Hudson,*
714 F.3d 29 (1st Cir. 2013) ............................................................................................ 4

*Harron v. Town of Franklin,*
2010 U.S. Dist. LEXIS 56177 (D. Mass. June 8, 2010) ................................................ 4

*Hounsell v. Los Angeles City Atty.,*
2015 U.S. Dist. LEXIS 159013 (C.D. Cal. Nov. 23, 2015) ............................................ 6

*Jackson v. County of Rockland,*
450 Fed. Appx. 15 (2d Cir. 2011) .................................................................................. 8

*Jeffes v. Barnes,*
208 F.3d 49 (2d Cir. 2000)............................................................................................. 9

*Joglo Realties, Inc. v. Seggos,*
 229 F. Supp. 3d 146 (E.D.N.Y. 2017) ............................................................................... 6

*K.D. v. White Plains Sch. Dist.,*
 921 F. Supp. 2d 197 (S.D.N.Y. 2013) .............................................................................. 10

*Kan. Penn Gaming, LLC v. Collins,*
 656 F.3d 1210 (10th Cir. 2011) .......................................................................................... 5

*Libbey v. Vill. of Atl. Beach,*
 982 F. Supp. 2d 185 (E.D.N.Y. 2013) ................................................................................ 5

*Local 851 of the Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics, Inc.,*
 2004 U.S. Dist. LEXIS 20088 (E.D.N.Y. Sept. 30, 2004) ............................................... 10

*Misere v. Gross,*
 826 F. Supp. 2d 542 (S.D.N.Y. 2011) ................................................................................ 3

*Monell v. New York Dep't of Social Servs.,*
 436 U.S. 658 (1978) ..................................................................................................... 9, 10

*Nardiello v. Town of Oyster Bay,*
 2016 U.S. Dist. LEXIS 49641 (E.D.N.Y. Apr. 12, 2016) .................................................. 4

*New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor,*
 2016 U.S. Dist. LEXIS 189158 (E.D.N.Y. Mar. 19, 2016) ................................................ 4

*Nicosia v. Town of Hempstead,*
 2017 U.S. Dist. LEXIS 92528 (E.D.N.Y. June 14, 2017) .................................................. 5

*Norwood v. Salvatore,*
 2014 U.S. Dist. LEXIS 6399 (N.D.N.Y. Jan. 17, 2014) .................................................... 6

*Panzella v. City of Newburgh,*
 231 F. Supp. 3d 1 (S.D.N.Y. 2017) ............................................................................ 3, 4, 8

*Parkash v. Town of Southeast,*
 2011 U.S. Dist. LEXIS 128545 (S.D.N.Y. Sept. 30, 2011), *aff'd* 468 Fed. Appx. 80 (2d Cir. 2012) ................................................................................................................................. 4

*Ruston v. Town Bd. for the Town of Skaneateles,*
 610 F.3d 55 (2d Cir. 2010) ................................................................................................. 4

*Serviss v. Margiotta,*
 2017 U.S. Dist. LEXIS 81385 (E.D.N.Y. May 25, 2017 .................................................. 10

*Solis v. City of Fresno,*
 2011 U.S. Dist. LEXIS 133040 (E.D. Cal. Nov. 17, 2011) ................................................ 5

*Vail v. City of New York*,
  68 F. Supp. 3d 412 (S.D.N.Y. 2014) .................................................................. 10

*Vogt v. City of Orinda*,
  2012 U.S. Dist. LEXIS 61596 (N.D. Cal. May 2, 2012) ...................................... 5

*Webber v. Maryland*,
  2017 U.S. Dist. LEXIS 3181 (D. M.D. Jan. 10, 2017) ......................................... 7

**Statutes**

Village Code § 16-1 ............................................................................................... 9

Village Code § 20-1 ........................................................................................... 9, 10

Village Code § 20-10 ............................................................................................ 10

Village Code § 20-12 ............................................................................................ 10

Village Code § 119-4 ............................................................................................ 10

Village Code § 119-8(B) ...................................................................................... 10

**Rules**

F.R.C.P. 12(b)(1) .................................................................................................. 11

F.R.C.P. 12(b)(6) ............................................................................................ 10, 11

## Introduction

Defendants Village of Pomona, Brett Yagel ("Mayor Yagel"), as Mayor of the Village of Pomona, and Doris Ullman ("Ms. Ulman"), as Village Attorney of the Village of Pomona (collectively "the Village" or "defendants"), respectfully submit this reply memorandum of law in further support of their motion to dismiss the second amended complaint ("SAC").

## Point I

### Plaintiffs Cannot Obtain Relief for the Village's Alleged Demand for Reimbursement of Unpaid Fees

Plaintiffs lack standing to pursue a claim based on the Village's attempt to collect unpaid fees. In arguing otherwise, plaintiffs posit that they have standing to recover damages for the delay in the issuance of the CO because they allege that the delay caused a significant decline in the sales price of the property. *See* Plaintiffs' Opposition Memo of 11/3/17 ("Pl. Mem") at 7; Ex. A¶ 36. This bare allegation is insufficient to show cognizable injury on a damages claim because the SAC does not include even a conclusory statement that such decline in sales price exceeded market fluctuations in price. *See* Village Memo of 10/16/17 ("Vil. Mem") at 7.

Plaintiffs claim that the cases cited by the Village in support of its position are inapposite because those cases did not specifically address equal protection or religious discrimination claims. *See* Pl. Mem at 7-8. Plaintiffs, however, should not be allowed to avoid the effect of their failure to plead any cognizable injury based on the delay in the issuance of the CO simply by framing their claims as selective enforcement claims rather than due process claims. *See* Vil. Mem at 7. Regardless of which theory underlies the claim, plaintiffs demand damages for a loss that, as far as the SAC indicates, cannot be traced to the delay in issuing the CO. None of the factual allegations in the complaint indicate that plaintiffs experienced an extraordinary delay, which led to a decrease in sales price beyond changes that would ordinarily result from market

1

forces. Accordingly, plaintiffs have no cognizable claim for damages arising from this delay. *See County Of Nassau ex rel. Nassau County Planning Com v. Eagle Chase Assoc.*, 144 Misc. 2d 641, 642-643 (Sup. Ct. Nassau County 1989).

Plaintiffs argue they have standing because they have alleged other instances of disparate treatment based on the imposition of certain conditions as a prerequisite to the issuance of a CO or a grading permit. *See* Pl. Mem at 7-8. Of course, even if that were true, it would not prevent a partial dismissal of plaintiffs' claims insofar as they seek damages arising from the delay rather than from the Village's other conduct. Anyway, plaintiffs are wrong about the sufficiency of their allegations of injury stemming from the Village's imposition of requirements for a grading permit and CO. After all, plaintiffs ultimately make the same conclusory and inadequate allegation of injury resulting from the Village's other supposedly discriminatory actions as they do regarding the attempt to collect unpaid fees and delay the CO, namely that plaintiffs were unable to earn the expected profit on the sale of the property because the approvals needed to prepare the property for such a profitable sale were delayed. *See* Ex. A¶¶ 36, 41-42. Notably, while plaintiffs claim that they "*agreed* to comply" with "unusual and costly requirements" for a grading permit, Ex. A¶ 33 (emphasis added), they do not allege that they actually complied by performing the required work and incurring the required costs. Rather, plaintiffs' only alleged loss was the nebulous decline in expected sales price of the property, which they do not claim to be greater than any market fluctuation or substantiate with any allegation of prior offers for the property. Accordingly, the SAC should be dismissed.

### Point II

**Plaintiffs' Bare Legal Conclusions Cannot Satisfy *Iqbal*'s Requirement that They Allege Concrete Facts Establishing the Existence of Similarly Situated Comparators Who Received More Favorable Treatment from the Village**

2

6794647v.2

To avoid dismissal of their religious discrimination claims under the Equal Protection and Free Exercise Clauses, plaintiffs must allege specific facts demonstrating that the Village afforded more favorable treatment under its land use regulations to a property owner who was similarly situated in "all material respects." *Misere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (internal quotations marks omitted); *see Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017). Plaintiffs fail to allege the requisite facts showing that their claims of selective enforcement are plausible or even possible under that standard. *See* Vil. Mem at 8-21. Plaintiffs' arguments in opposition to dismissal simply ignore the relevant legal standards and the threadbare quality of the allegations in the SAC.

Plaintiffs' argument that they can satisfy their pleading obligations by simply alleging that unidentified property owners were "similarly situated" and received "contrary treatment" to that received by plaintiffs, *see* Pl. Mem at 9-11, flies in the face of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and its progeny. In *Iqbal*, the Supreme Court held that a complaint which merely recites the elements of a cause of action and adds allegedly factual conclusions cannot withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Indeed, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks and citation omitted). This is so because *Iqbal* requires not only that the plaintiff supply the defendant with notice of the overall nature of its claim, but also that the plaintiff specifically plead a "plausible" claim supported by allegations of particular facts. *See id.* at 678. Here, the overwhelming majority of the allegations in the SAC are mere conclusions that the circumstances of unidentified comparators are "similar" to plaintiffs', that those comparators received "contrary" treatment to that received by plaintiffs, and that the Village's conduct toward plaintiffs was "unusual" or "unprecedented." Ex. A ¶¶ 19, 23, 29 31, 32. Under *Iqbal*, those mere conclusions

3

cannot sustain plaintiffs' claims. *See id.* Indeed, courts have routinely dismissed complaints, like the SAC here, which assert equal protection claims based on mere allegations that a municipality's conduct is unprecedented or contrary to prior practices. *See Harron v. Town of Franklin*, 2010 U.S. Dist. LEXIS 56177, *5 (D. Mass. June 8, 2010); *Nardiello v. Town of Oyster Bay*, 2016 U.S. Dist. LEXIS 49641, *19 (E.D.N.Y. Apr. 12, 2016); *cf. Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009).

Plaintiffs also assert that they do not need to specifically identify the alleged comparators -- the unknown owners of unspecified neighboring properties and the unidentified prior owner of plaintiffs' property -- to set forth the similar-comparator element of their claims. Instead, plaintiffs opine, the Village can obtain adequate notice of the identities and characteristics of the comparators through discovery or a public records search. *See* Pl. Mem at 9. But plaintiffs' failure to identify with specificity an allegedly similar comparator warrants dismissal of a claim of selective enforcement based on religion. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010); *Panzella*, 231 F. Supp. 3d at 9-10; *New Page at 63 Main, LLC v. The Inc. Vill. of Sag Harbor*, 2016 U.S. Dist. LEXIS 189158, *59-60 (E.D.N.Y. Mar. 19, 2016); *Parkash v. Town of Southeast*, 2011 U.S. Dist. LEXIS 128545, *23-25 (S.D.N.Y. Sept. 30, 2011), *aff'd* 468 Fed. Appx. 80, 81 (2d Cir. 2012); *see also Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011); *Freeman v. Town of Hudson*, 714 F.3d 29, 39-40 (1st Cir. 2013). Faced with the inadequacy of plaintiffs' allegations, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process," for the Supreme Court has decisively rejected the notion that a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support

4

6794647v.2

recovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-561 (2007) (internal quotation marks, punctuation and citation omitted). Since plaintiffs have failed to allege the existence of specific identifiable comparators, plaintiffs cannot now compel the Village to resort to discovery or records searches to make up for the deficiency of their pleadings. *See Vogt v. City of Orinda*, 2012 U.S. Dist. LEXIS 61596, *8 (N.D. Cal. May 2, 2012).

Plaintiffs further insist that, because they describe their property as "similarly sloped" to the unidentified neighboring properties, they have set forth sufficient allegations to show that they were similarly situated to those owners in all material respects for purposes of the Village's grading permit requirements. *See* Ex. A ¶ 23; Pl. Mem at 9.[1] A bald statement that a comparator is "similar" to the plaintiff in a certain respect does not reveal how the relevant qualities of the comparator and the plaintiff are in fact similar, and therefore such a conclusory statement offers no specific facts that would establish a plausible selective enforcement claim. *See Solis v. City of Fresno*, 2011 U.S. Dist. LEXIS 133040, *20-21 (E.D. Cal. Nov. 17, 2011); *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 210-211(E.D.N.Y. 2013); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011) ("As we discussed above, after *Twombly* and *Iqbal*, it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects.")

Because the Village Code imposes differing requirements on property owners based on very specific slope categories and a host of characteristics of the property beyond just slope, the alleged general similarity between the slopes of plaintiffs' property and other properties cannot

---

[1] Plaintiffs improperly attempt to add a new allegation to their complaint by asserting that the neighboring property owners "fac[e] similar topographic conditions." Pl. Mem at 9. In the SAC, plaintiffs allege only that other properties on High Mountain Road are "similarly-sloped," Ex. A ¶ 23, but they do not otherwise allege any similarity in "topographic conditions." Thus, plaintiffs' newly minted allegation should be disregarded on this motion to dismiss. *See Nicosia v. Town of Hempstead*, 2017 U.S. Dist. LEXIS 92528, *14 (E.D.N.Y. June 14, 2017).

5

show that they are similarly situated in *all* material respects for purposes of the numerous relevant criteria of the Village Code. *See* Vil. Mem at 12-16. Thus, even if plaintiffs' mere conclusion that their property's slope was "similar" to that of other neighboring properties could be accepted as true without any specific description of the properties' slopes, that allegation of one of just several relevant similarities is insufficient to establish that plaintiffs and neighboring property owners were similarly situated for purposes of the requirements for the receipt of a grading permit. *See, e.g., Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 154-156 (E.D.N.Y. 2017); *Norwood v. Salvatore*, 2014 U.S. Dist. LEXIS 6399, *23-26 (N.D.N.Y. Jan. 17, 2014); *cf. Hodge v. City of Long Beach*, 2010 U.S. Dist. LEXIS 138344, *58-59 (E.D.N.Y. Dec. 28, 2010); *see also Crisante v. Coats*, 2012 U.S. Dist. LEXIS 61209, *10-11, *32 (Middle Dist. Florida May 2, 2012); *Hounsell v. Los Angeles City Atty.*, 2015 U.S. Dist. LEXIS 159013, *20-24 (C.D. Cal. Nov. 23, 2015).

Turning to the disparate treatment element of their claims, plaintiffs opine that, because they allege that the Village's imposition of additional permitting requirements on plaintiffs was "contrary to the treatment" given to neighboring property owners, Ex. A ¶ 23, they have pleaded a plausible claim of disparate treatment insofar as the allegation suggests that the other property owners applied for grading permits and got them without having to meet any of the requirements imposed on plaintiffs. *See* Pl. Mem at 11. But the SAC does not actually allege whether the other property owners sought or received permits, and plaintiffs' conclusory allegation of "contrary treatment" is no substitute for such concrete factual averments. *Cf. Guillory v. Ellis*, 2013 U.S. Dist. LEXIS 69183, *24-25 (N.D.N.Y. Apr. 3, 2013) (mere description of mistreatment of Jewish inmate/plaintiff coupled with allegation that non-Jewish inmates were treated "differently" than Jewish inmates was inadequate to plead valid equal protection claim);

*Webber v. Maryland*, 2017 U.S. Dist. LEXIS 3181, *12-13 (D. M.D. Jan. 10, 2017) (mere allegation that loan terms offered to plaintiff were "disparate" was insufficient).[2]

Inventing new, more specific allegations, plaintiffs assert that the SAC indicates that neighboring property owners "are 'permitted' to engage in grading projects and create usable backyards." Pl. Mem at 9. But that is not what the SAC says. While the SAC notes that the Village imposed permitting requirements on plaintiffs that were "contrary to the treatment afforded similarly-sloped and neighboring properties on High Mountain Road owned by non-Jews," Ex. A ¶ 23, the SAC does not specifically allege that those other owners were "permitted" to grade the slopes, as plaintiffs now claim. Instead, the SAC alleges only that it was plaintiffs, not their neighbors, who sought to be "permitted" to grade out the slopes on plaintiffs' property; indeed, the SAC declares that the Village "required *plaintiffs* to fulfill costly conditions before [plaintiffs'] being *permitted* to grade out steep slopes on *the property* [i.e., plaintiffs' property] and thereby created usable backyard space, enhancing the value of *the property* [of plaintiffs]." Ex. A ¶ 23 (emphasis added). Thus, plaintiffs have failed to allege facts demonstrating that they were similarly situated to their neighbors in their attempts to obtain a permit to perform grading work. *See Panzella*, 231 F. Supp. 3d at 8-10 (dismissing equal protection claim where complaint claimed that comparators were similar waterfront businesses but did not specifically allege that those comparators applied for and obtained a contract with the city similar to plaintiff's contract and that the city honored the contract with the comparator, unlike the contract with plaintiff).

---

[2] Plaintiffs also rely on their allegation that the village "insist[ed] that plaintiff complete costly requirements which other similarly-situated property owners did not have to satisfy . . ." Ex. A ¶ 29. But this allegation is even more lacking than the others. Unlike the allegation in paragraph 23 of the SAC, which at least identifies the general location of the comparators' properties as High Mountain Road, the allegations in paragraph 29 reveal nothing about the identity, location or characteristics of the "other similarly-situated property owners" who did not have to meet unspecified "costly requirements." Therefore, it is impossible to tell whether those unknown individuals received any particular beneficial treatment from the Village or owned property that was similarly situated to plaintiffs' in all respects material to the enforcement of the Village Code.

7

Finally, plaintiffs claim their allegations of disparate treatment are sufficient to raise an inference that defendants' actions were motivated by Mr. Manes's Jewish faith, notwithstanding that Mayor Yagel or Ms. Ulman made no derogatory comments about his religion. *See* Pl.Mem at 10. But plaintiffs attack a straw man, as the Village has never asserted that plaintiffs must allege that the relevant Village employees made disparaging comments about Mr. Manes's religion to support plaintiffs' selective enforcement claims. In truth, the Village argued that plaintiffs must allege some sort of conduct establishing a nexus between defendants' treatment of plaintiffs and Mr. Manes's religious background. Plaintiffs have failed to meet this requirement because their allegations of disparate treatment are fatally flawed, and their mere allegation of defendants' awareness of Mr. Manes's religious background does not demonstrate that they treated him differently from other similarly situated non-Jewish people based on his religion. *See Jackson v. County of Rockland*, 450 Fed. Appx. 15, 19 (2d Cir. 2011); *see* Ex. A ¶ 12.

### Point III

**Plaintiffs Have Not Alleged Sufficient Facts to Sustain a *Monell* Claim or Defeat Immunity**

Plaintiffs have failed to adequately plead an essential element of their claims against the Village under *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 692-94 (1978), because they offer only the conclusion, without supporting facts, that Mayor Yagel and Ms. Ulman acted as municipal policymakers with respect to the delay of the issuance of a CO and plaintiffs' request to perform grading work. *See* Vil. Mem at 22-23. In opposition, plaintiffs now argue that, because they allege in the SAC that Ms. Ulman and Mayor Yagel told the Village Engineer not to immediately issue a CO or approve plaintiffs' application for grading work without further conditions, plaintiffs have adequately pleaded that Ms. Ulman and Mayor Yagel somehow controlled the Village Engineer or overruled his decisions, thereby acting as municipal policymakers despite the lack of any authority to do so. *See* Pl. Mem at 13-14. But plaintiffs

8

6794647v.2

misapprehend the structure of authority in the Village and the policymaker element of a *Monell* claim.

To plead a *Monell* claim, a plaintiff must allege facts that establish that the relevant municipal official is a "final policymaker," meaning that the individual is "responsible under state law for making policy in that area of the municipality's business" or possesses the "power to make official policy . . . on the particular issue involved in the action." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal brackets, quotation marks, emphasis and citations omitted). Thus, "the question of whether a given official is the municipality's final policymaking official in a given area is a matter of law to be decided by the court." *Id.* Here, the controlling local laws demonstrate that the Mayor and the Village Attorney are not responsible for any decisions regarding grading permits or COs. *See* Village Code §§ 16-1 (Board approves legislation); 20-1 (Mayor cannot fire officials without Board Approval). Rather, it is the Planning Board which has the final authority to accept or reject such land-use applications. *See* Village Code §§ 20-12; 119-4 (Engineer makes land use decision on non-steep slope properties subject to appeal to Planning Board, and Planning Board makes both initial and final decision for steep slope properties). Consequently, plaintiffs' claim fails.

Plaintiffs fail to allege any facts showing that the Village *de facto* stripped the Planning Board of its final authority to reject or accept plaintiffs' particular applications and delegated that power to Mayor Yagel or Ms. Ulman. At most, the allegations suggest that the Village Engineer, whose decision was subject to further review by the Planning Board anyway, chose to accept Mayor Yagel's and Ms. Ulman's recommendations under unspecified "pressure," notwithstanding that neither Mayor Yagel nor Ms. Ulman had the power to supervise or fire the Engineer under the Village Code. *See* Ex. A ¶¶ 13-14, 19, 23, 25; *see also* Village Code §§ 119-

9

8(B); 20-1; 20-10; 20-12. Such allegations fail to establish that Mayor Yagel and Ms. Ulman acted as final policymakers, and therefore plaintiffs' *Monell* claims must fail. *Cf. Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 227-229 (E.D.N.Y. 2015); *see generally Serviss v. Margiotta*, 2017 U.S. Dist. LEXIS 81385, *14-18 (E.D.N.Y. May 25, 2017); *Vail v. City of New York*, 68 F. Supp. 3d 412, 430-431 (S.D.N.Y. 2014).

Finally, plaintiffs assert that their claims against Mayor Yagel and Ms. Ulman should not be dismissed on qualified immunity grounds because the reasonableness of those officials' actions and their entitlement to immunity are factual questions which cannot be resolved on a motion to dismiss. *See* Pl. Mem at 13. But where the facts alleged in a complaint demonstrate that the defendants' conduct was objectively reasonable, even if ultimately unconstitutional, the complaint should be dismissed under Rule 12(b)(6) for qualified immunity. *See K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 211-212 (S.D.N.Y. 2013). Here, it has been shown that it was objectively reasonable for Mayor Yagel and Ms. Ulman to believe that plaintiffs were not similarly situated to other property owners. Given the facts alleged in the SAC and a fair reading of the multi-faceted Village Code provisions, Mayor Yagel and Ms. Ulman reasonably concluded that they could legitimately require plaintiffs to comply with Code provisions which they did not enforce against evidently dissimilar property owners, and the SAC should be dismissed for immunity. *See 545 Halsey Lane Props., LLC v. Town of Southampton*, 2015 U.S. Dist. LEXIS 45856,*45-48 (E.D.N.Y. Apr. 8, 2015); *Local 851 of the Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 2004 U.S. Dist. LEXIS 20088,*21-36 (E.D.N.Y. Sept. 30, 2004).

## Conclusion

For the reasons stated above and in the Village's principal moving papers, this Court should grant defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), and dismiss the SAC in its entirety.

10

6794647v.2

Dated:   White Plains, New York
         November 30, 2017

                                    Respectfully submitted,

                                    WILSON, ELSER, MOSKOWITZ,
                                    EDELMAN & DICKER LLP
                                    *Attorneys for Defendants*

                                    *[signature]*

                                    Janine A. Mastellone
                                    John B. Martin

                                    1133 Westchester Avenue
                                    White Plains, NY 10604
                                    (914) 323-7000
                                    Our File No. 00295.12564