UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAL PROPERTIES OF POMONA, LLC, and AVROHOM MANES,<br><br>*Plaintiffs*,<br><br>-against-<br><br>VILLAGE OF POMONA, BRETT YAGEL, MAYOR OF THE VILLAGE OF POMONA, and DORIS ULMAN,<br><br>*Defendants*. | 17-CV-02928 (CS)<br><br>**DECLARATION OF AVROHOM MANES IN SUPPORT OF MOTION FOR RELIEF FROM ORDER AND JUDGMENT** |

Pursuant to 28 U.S.C. § 1746, Avrohom Manes, declares the following to be true under penalty of perjury under the laws of the United States of America:

1. I and my company, Tal Properties of Pomona, LLC, are the Plaintiffs in this action. I make this declaration in support of Plaintiffs' motion for relief from the order of this Court, dated January 10, 2018, granting Defendants' motion to dismiss the Complaint (the "Order"), and the judgment of dismissal, entered on January 12, 2018 (the "Judgment"), pursuant to Fed. R. Civ. P. 60(b)(2), based on newly-discovered evidence, and 60(b)(3), based on Defendants' misconduct in failing to provide land and building records regarding comparable properties in response to my FOIL requests.

2. I am a resident of the Village of Pomona in Rockland, County New York (the "Village") and am an investor in real estate. The properties that I purchased in Pomona were subdivided and approved by the Village for residential use years ago. However, in reaction to the influx of Orthodox Jewish residents, the Village has changed course and is actively working to impede the construction of new residences and the issuance of certificates of occupancy.

3. The purpose of this declaration is to place before the Court certain documents and other evidence cited and discussed in the accompanying memorandum of law.

**<u>The Human Rights Report</u>**

4. Attached hereto as **Exhibit 1** is a true and correct copy of an investigation report from the New York State Division of Human Rights, dated June 4, 2018 (the "Human Rights Report"). The Human Rights Report, which is based on interviews of Village officials and employees, and a review of voluminous internal documents, provides previously-unavailable evidence that I, and other Orthodox Jewish residents of the Pomona, were, in fact, victims of an intentional campaign of religious discrimination by Defendants and others in the Village government. This evidence supports an equal protection claim based on direct evidence of discrimination – a claim I could not have pled before, but in the interest of justice should be permitted to pursue now.

5. Attached hereto as **Exhibit 2** is a true and correct copy of whistleblower complaint, filed by Noreen Shea with the New York Division of Human Rights. Ms. Shea's complaint sparked the investigation that resulted in the Human Rights Report.

6. Attached hereto as **Exhibit 3** is a true and correct copy of Ms. Shea's rebuttal to the answer filed by the Village in response to Ms. Shea's complaint to the Human Rights Division.

7. Attached hereto as **Exhibit 4** is a true and correct copy of notes from the Human Rights investigator's witness interviews.

8. In the wake of the Human Rights Report, other victims of Defendants' campaign of discrimination against Orthodox Jewish residents have come forward. Attached as **Exhibit 5** is a true and correct copy of a complaint filed by three residents – Samuel Indig, Meir Kahana

and Robert Klein – asserting claims against the Village for discriminating against them on the basis of their religion.  I have also spoken with other Orthodox residents who have had similar experiences but have been hesitant to come forward publicly for fear of retaliation.

**Defendants' Additional Acts of Discrimination**

9. In the past year, I have been subjected to additional acts of discrimination beyond those set forth in the Complaint.

10. **First**, in mid-December 2017, the Village Building Inspector Louis Zummo issued a baseless stop work order for a project on the driveway at my home.  A permit had been issued for the project, and no work was being performed when Zummo came to deliver the order.  Zummo told me that Mayor Yagel directed him to issue the order at the behest of a non-Jewish neighbor of mine, who is Yagel's friend.

11. Ironically, the Village refused to take any action when that same neighbor constructed two large pillars with his name and address on the at the entrance to a road that leads to both of our homes and a third neighbor's home.  Zummo admitted that the Village code did not permit the neighbor to place the pillars there, and that no permit had been issued for this.  However, at Mayor Yagel's instruction, Zummo stood by and allowed this, and did not issue a violation.

12. **Second**, the Village has refused to issue a property tax refund to me, even after it received Court orders directing it to reduce the assessment.  In defiance of these orders, the Village has to date refused to issue the refund.

13. **Third**, the Village has made a frivolous claim that I owe money for a bill they claim to have paid for snow removal on the access roads leading to property I own in the Village.  Leaving aside the fact that there is no basis to make me pay for the cost of maintaining these

roads, the snow removal bill is a complete fabrication.  The Village has a contract with Town of Haverstraw for snow removal services on public roads.  However, there is no portion of the bill that is itemized for the access roads for which the Village is now claiming I am responsible.

14. **Fourth**, Village attorney Ulman admitted to me, in the last year, that she urged a local land owner, who at the time was in serious negotiations with me to sell various parcels in the Village, not to sell to me, and rather to sell the property to another buyer who is not an Orthodox Jew. As a result of Ulman's interference, the owner backed out of the transaction and refused to sell to me, thus causing me to lose out on a transaction worth millions of dollars.

**Admissions by Building Inspector Zummo**

15. Following the issuance of the Human Rights Report, I had several conversations with the Village Building Inspector, Louis Zummo, during which he admitted that Defendants discriminated against me on the basis of my religion.

16. Specifically, Zummo admitted that Yagel and Ulman intentionally caused delays in the issuance of a certificate of occupancy for the property I owned at 22 High Mountain Road by imposing requirements that were not applied to other non-Jewish property owners.

17. Zummo further stated that the reason for the disparate treatment I suffered was that Mayor Yagel does not tolerate change and feels threatened by the Orthodox Jewish community moving into the Village.  Zummo said that Yagel would make comments such as "We don't want this element" or "We don't want them" in reference to Orthodox Jews.

**Admissions by Defendant Ulman**

18. On July 19, 2018, I had a conversation with Defendant Ulman during a break in a deposition in a separate land use litigation between the Village and my company TAL Properties.

4

19. During that conversation, Ulman admitted to me that "certain residents' lives were made miserable by the discriminatory actions of people working for the Village." She attempted to absolve herself of responsibility by stating that "it's my job to represent Mayor Yagel" – when, in fact, she represents the Village – and by claiming that she eventually resigned from representing the Village zoning board because of its discriminatory treatment of Robert Klein and other Orthodox Jewish residents.

20. Ulman also admitted that the Village board of trustees improperly targeted me by pursuing a claim that I am responsible for maintaining the roads accessing my properties, when they did not make such claims against other similarly-situated, non-Jewish property owners.

**Defendants' Failure to Produce Building Records in Response to My FOIL Requests**

21. In preparing the Complaint in this action, I made numerous attempts to compile evidence of similarly-situated properties owned by non-Jews whom the Village did not subject to the same delay tactics and restrictive conditions I faced regarding certificates of occupancy and grading permits. However, the Village never provided meaningful responses to any of my FOIL requests – the files I sought were either "missing" altogether, or the relevant portions were not in the file.

22. For example, I submitted numerous FOIL requests for the files for 29 High Mountain Road – another neighboring property I own with a similarly-sloped rear yard. After multiple requests, the Village finally issued a written response (attached as **Exhibit 6**) indicating that there was "No File" for this property.

23. I also submitted a FOIL request for 31 High Mountain Road – yet another property I purchased on the same street. The file had a reference to a zoning board meeting

relating to the steep slope on the property. But the outcome of the meeting and the plans for the slope were missing.

24. My own home at 8 East Court has a steep slope that is likewise comparable to 22 High Mountain. But the when I requested the file, all documentation relating to the slope was missing from the file.

25. In addition, at the Village hall, I personally reviewed the available files for other neighboring properties, on the same slope, including 6, 8 and 10 High Mountain and 2 Riverview Court. Again, the files were either missing or the relevant information was not in the files

26. The Human Rights Division investigation, and the testimony of Noreen Shea, a former Deputy Clerk in the Village, and Village Trustee Ian Banks, shows that the difficulties I experienced accessing public records for comparable properties were not a coincidence, but result of Defendants' misconduct.

27. Ms. Shea and Mr. Banks testified that the Village building files were in "disarray"; that Ms. Shea complained about an inability to access records and a lack of training in how to do so; and that two memorandums Ms. Shea sent to the Trustees reporting on these issues were ignored. Even worse, Ms. Shea reports that there was "an overall attitude in the Village of Government to be unresponsive to requests from Orthodox Jewish residents for access to property records," and that she was chastised by Defendant Yagel for being "too cooperative" with Orthodox Jewish residents in responding to their record requests.

28. Moreover, Ms. Shea explains that only files located on the ground floor of the Village office were searched in response to FOIL requests. Other records that were stored in the basement were not searched.

29. Zummo likewise admitted to me that the Village files were in disarray and that files stored in the basement of the Village Office were not searched in response to FOIL requests. In particular, he admitted that relevant documents for 22 High Mountain Road (i.e., the documents relating to the slope) were missing. And he acknowledged that the files necessary to show comparators elsewhere on the street or nearby streets were either missing entirely, or the relevant portion was missing.

30. Importantly, Zummo also told me that Defendant Ulman caused the file for 22 High Mountain to be altered in an effort to substantiate the claim that there was a $6,000 bill for work associated with the property. He reviewed the file and found no evidence of such a bill. However, at the direction of Ulman, Village staff added "notes" to the file reflecting the supposed bill.

31. In a separate land use litigation between my company, TAL Properties, and the Village, concerning ownership of the roads accessing my properties, the Village withheld numerous documents from production in response to FOIL requests and document demands. Specifically, I requested work tickets for work on various roads, in order to demonstrate that the Village owns, and is responsible for maintaining those roads. The Village produced only 10 work tickets. However, from other sources, I obtained 60 such work tickets that the Village should have produced, and presented them to the Court.

Dated: November 1, 2018
Haifa, Israel

_____
AVROHOM MANES

Scanned by CamScanner