**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TAL PROPERTIES OF POMONA, LLC, and
AVROHOM MANES,

*Plaintiffs*,

-*against*-

VILLAGE OF POMONA, BRETT YAGEL,
MAYOR OF THE VILLAGE OF POMONA,
and DORIS ULMAN,

*Defendants.*

17-CV-02928 (CS)

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RELIEF FROM ORDER AND JUDGMENT**
_____

**SCHLAM STONE & DOLAN LLP**

Bradley J. Nash
26 Broadway, 19th Floor
New York, NY 10004
Phone: 212-344-5400
Fax: 212-344-7677
E-mail: bnash@schlamstone.com

*Attorneys for Plaintiffs TAL Properties of Pomona, LLC and Avrohom Manes*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
   I. THE ORDER AND JUDGMENT SHOULD BE VACATED BASED ON NEWLY-DISCOVERED EVIDENCE ....................................................................................................... 2
      A. The Evidence in the Human Rights Report and Defendants' Subsequent Admissions Would Have Changed The Outcome of the Motion to Dismiss ......................................... 2
      B. The Evidence in the Human Rights Report and Defendants' Subsequent Admissions Are Properly Considered On This Motion ........................................................................ 7
      C. Plaintiffs' Motion Is Timely ............................................................................................ 9
   II. THE ORDER AND JUDGMENT SHOULD BE VACATED BASED ON DEFENDANTS' MISCONDUCT IN FAILING TO PRODUCE PUBLIC RECORDS REGARDING COMPARATORS ...................................................................................... 11
CONCLUSION .................................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Armenian Assembly of Am., Inc.*,
  924 F. Supp. 2d 183 (D.D.C. 2013) ............................................................................................. 8

*Barua v. City of New York*,
  2016 U.S. Dist. LEXIS 179610, at *34  (S.D.N.Y. Dec. 28, 2016) ............................................ 4

*Catskill Dev., LLC v. Park Place Entm't Corp.*,
  286 F. Supp. 2d 309 (S.D.N.Y. 2003) ....................................................................................... 11

*Doe v. Village of Mamaroneck*,
  462 F. Supp. 2d 520 (S.D.N.Y. 2006) .................................................................................... 3, 4

*Fincher v. County of Westchester*,
  979 F. Supp. 989 (S.D.N.Y. 1997) ............................................................................................. 9

*Hamzik v. Zale*,
  2008 WL 2073957 (N.D.N.Y. May 14, 2008) ......................................................................... 10

*Henriquez v. Astrue*,
  499 F. Supp. 2d 55 (D. Mass 2007) .......................................................................................... 10

*In re Optionable Secs. Litig.*,
  2010 WL 3171262 (S.D.N.Y. Aug. 10, 2009) ........................................................................... 8

*In re: Stage Presence Inc.*,
  2016 WL 3582650 (Bankr. S.D.N.Y. June 24, 2016) ................................................................ 7

*Jones v. JC Penny's Dep't Stores*,
  2007 U.S. Dist. LEXIS 104120, at *19 (W.D.N.Y. Jan. 22, 2007) ........................................... 3

*Kurzweil v. Philip Morris Cos., Inc.*,
  1997 WL 167043 (S.D.N.Y. Apr. 9, 1997) ...................................................................... 6, 7, 8

*Matlock v. Greyhound Lines, Inc.*,
  2010 U.S. Dist. LEXIS 92359 (D. Nev. Aug. 10, 2010) ............................................................ 8

*Muhammad v. Maduekwe*,
  2016 U.S. Dist. LEXIS 25826, at *22, 26 (S.D.N.Y. Feb. 29, 2016) ........................................ 4

*Pyke v. Cuomo*,
  258 F.3d 107 (2d Cir. 2001) ............................................................................................................ 2

*Reese v. McGraw-Hill Cos., Inc.*,
  293 F.R.D. 617 (2013) ..................................................................................................................... 7

*Ritchie v. Taylor*,
  701 F. App'x 45 (2d Cir. 2017) ....................................................................................................... 8

*Savino v. Town of Southeast*,
  983 F. Supp. 2d 293 (S.D.N.Y. 2013) ............................................................................................. 4

*Smith v. Westchester Co.*,
  769 F. Supp. 2d 448 (S.D.N.Y.2011) .............................................................................................. 8

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) .......................................................................................................... 11

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
  921 F.2d 409 (1990) ........................................................................................................................ 6

*United States v. Int'l Bhd. of Teamsters*,
  247 F.3d 370 (2d Cir. 2001) ....................................................................................................... 2, 7

## Statutes & Rules

Fed. R. Civ. P. 59(b) .......................................................................................................................... 10

Fed. R. Civ. P. 60(b)(2) ................................................................................................................ 1, 6, 7

Fed. R. Civ. P. 60(b)(3) ...................................................................................................................... 11

Fed. R. Evid. 801(d)(2)(D) .................................................................................................................. 9

Rule 60 ..................................................................................................................................... 8, 10, 11

Rule 60(b) ............................................................................................................................................ 9

Plaintiffs TAL Properties of Pomona, LLC ("Tal Properties") and Avrohom Manes ("Mr. Manes") submit this reply memorandum of law in further support of their motion for relief from the order of this Court, dated January 10, 2018, granting Defendants' motion to dismiss the Complaint (the "Order"), and the judgment of dismissal, entered on January 12, 2018 (the "Judgment"), pursuant to Fed. R. Civ. P. 60(b)(2), based on newly-discovered evidence, and 60(b)(3) based on Defendants' misconduct in failing to provide land and building records regarding properties comparable to Mr. Manes' property in response to his FOIL requests.

## INTRODUCTION

Following the dismissal of Plaintiffs' Complaint on a pleading motion, the New York Division of Human Rights issued a bombshell investigation report based on the complaint of a whistleblower who revealed a "hidden agenda against Jewish residents" by the Pomona Village government. The record generated by the Human Rights Report, and subsequent testimony and admissions that followed in its wake provides a previously-unavailable basis for Plaintiffs to plead an equal protection claim based on direct evidence of deliberate policy of discrimination by Pomona's Mayor and other Village leaders.

In opposing this motion, Defendants urge the Court to turn a blind eye to the shocking new evidence uncovered by the Human Rights Division because they contend it is not in admissible form. Defendants conveniently forget that they did not prevail on the merits, but on a pleading motion – a stage of the case at which all well-plead allegations must be presumed to be true. The admissibility of the Human Rights Report is not at issue – the only question is whether the record provides a basis for Plaintiffs to plead a cognizable claim. It is clear that it does. In any event, as further demonstrated below, although admissibility is not required, the record contains ample relevant evidence in admissible form.

1

As the judgment of dismissal was entered at the pleading stage, the prejudice to Defendants if the motion is granted would be minimal. The unusual and disturbing nature of the newly-discovered evidence of Defendants' intentional discrimination justifies vacating the Judgment and allowing Plaintiffs to have their day in Court.

## ARGUMENT

I. **THE ORDER AND JUDGMENT SHOULD BE VACATED BASED ON NEWLY-DISCOVERED EVIDENCE**

   A. **The Evidence in the Human Rights Report and Defendants' Subsequent Admissions Would Have Changed The Outcome of the Motion to Dismiss**

There is no question that the newly-discovered evidence at issue here "would have changed the outcome" of Defendants' motion to dismiss. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). Indeed, as shown in Plaintiffs' opening brief, the record of the Human Rights Report, coupled with Defendants' subsequent admissions, easily cures the pleading defects that led to the dismissal of the Complaint. In the Order, the Court held that Plaintiffs failed to plausibly allege: (1) "comparators that are similarly-situated in all material respects"; and (2) "that defendants' actions were motivated by religious-based animus." Nash Decl., Ex. 2 (the "Order") at 9:5–6. In the wake of the Human Rights Report, however, the record is replete with specific first-hand evidence of the religiously-motivated discriminatory animus underlying Defendants' unfair treatment of Mr. Manus. *See* Opening Mem. at 2–3, 8–12, 18.

Armed with this previously-unavailable evidence, Plaintiffs are now able to plead an Equal Protection claim based on direct evidence of discriminatory intent (a *Pyke* claim), thus dispensing with the need for evidence of comparators. *See Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) ("a plaintiff . . . who alleges that a facially neutral law or policy has been applied

in an intentionally discriminatory . . . manner . . . is not obligated to show a better treated, similarly situated group of individuals of a different [group] in order to establish a claim of denial of equal protection"); *Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006) (McMahon, J.) ("Once racially discriminatory intent infects the application of a neutral law or policy, the group that is singled out for discriminatory treatment is no longer similarly situated to any other in the eyes of the law, so adverse effects can be presumed."). In the interest of justice, Plaintiffs should be permitted to replead their Equal Protection claim under *Pyke* based on the newly-available direct evidence of Defendants' intentional policy of discrimination against Orthodox Jewish residents, including Mr. Manes.

Defendants' argument that Plaintiffs cannot plead a *Pyke* claim fails. Defendants first suggest that an Equal Protection claim that "challenges fundamentally discretionary enforcement decisions such as prosecution," must always be "analyzed under a selective enforcement theory, which requires a showing of a similar comparator." Defs. Mem. at 15. But the cases Defendants cite do not stand for the proposition that "discretionary enforcement decisions" can *only* be the subject of a "selective enforcement theory." Rather, the Equal Protection claims in those cases were assessed under the selective-enforcement framework because, unlike in this case, the plaintiff had no direct evidence of discriminatory animus, and therefore intent had to be established circumstantially through comparing the treatment plaintiff received to the defendant's treatment of similarly-situated comparators. *See, e.g.*, *Jones v. JC Penny's Dep't Stores*, 2007 U.S. Dist. LEXIS 104120, at *19 (W.D.N.Y. Jan. 22, 2007) ("Defendants argue that Plaintiff has failed to produce any evidence suggesting that any of the challenged conduct was motivated by racial animus . . . but have not directly addressed the equivocal selective prosecution claim."); *Muhammad v. Maduekwe*, 2016 U.S. Dist. LEXIS 25826, at *22, 26

3

(S.D.N.Y. Feb. 29, 2016) (finding "no competent evidence suggests that [defendant] singled Muhammad out for special punishment simply because he was a Black Muslim"; *Pyke* was inapplicable because plaintiff "does not complain about the enactment or application of any facially neutral law or policy"); *Barua v. City of New York*, 2016 U.S. Dist. LEXIS 179610, at \*34 (S.D.N.Y. Dec. 28, 2016) (finding that "no reasonable inference of discriminatory intent can be drawn from the facts").

By contrast, where, as here, there is *direct* evidence of discriminatory intent, Courts have applied *Pyke* to claims arising from the discriminatory application of "discretionary enforcement decisions." Thus, in *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 299–300 (S.D.N.Y. 2013) (Román, J.), the Court, applying *Pyke*, found evidence of a discriminatory motive for a zoning enforcement officer's discretionary issuance of a cease and desist order based on the officer's derogatory comment about Italians. *See also Village of Mamaroneck*, 462 F. Supp. 2d at 543–49 (applying *Pyke* to a claim arising from discretionary ticketing by Village police, motivated by discrimination against Hispanic day laborers).

Equally unavailing is Defendants' contention that the evidence of discriminatory intent in the Human Rights Report and Defendants' admissions set forth in the Manes Declaration amount to mere "conclusory allegations of an anti-semitic culture among Village officials." Defs. Mem. at 18; *see also id.* at 16 ("To satisfy this discriminatory intent element, the plaintiff must do more than merely prove that community members believed there was a discriminatory bias among the relevant government officials or that a vaguely defined culture of discrimination existed in the government."). The evidence is far from conclusory. Noreen Shea testified, based on first-hand experience as the Village Deputy Clerk to an "ongoing hidden agenda against [] Jewish residents" of Pomona, Ex. 1 at 2, stating unequivocally: "If anyone dares tell me there is no

4

religious discrimination in the Village of Pomona, they have not worked a day in the building department." Ex. 3 and 32.  Ms. Shea supported this with specific – and highly disturbing – examples of discriminatory conduct.  Indeed, at the same time Defendants were subjecting Plaintiff to "unfair" treatment, Defendant Yagel routinely disparaged Orthodox Jews as "Them" and "Those People" (Ex. 1 at 5; Ex. 3 at 13, 34); chastised Ms. Shea for having a "nice, friendly conversation" with Mr. Manes and instructed her to "have very little conversation with 'those types'" (Ex. 2 ¶¶ 5–6); berated a Village resident for selling her home to one of "Them" (Ex. 3 at 34); instructed Ms. Shea to place pork rinds on the public counter in the Village office to deter Orthodox Jews who came to the office seeking municipal services, (Ex. 1 at 1; Ex. 2 ¶ 8); and criticized her for responding too quickly to requests from Orthodox Jewish residents, instructing her that they should be made to wait (although he told her to provide records immediately to a non-Jewish person who requested them).  Ex. 1 at 1, 5; Ex. 3 at 13, 22; Shea Decl. ¶ 4.  Even more shockingly, Yagel branded Ms. Shea a "Jew Lover," and terminated her employment for refusing to be complicit in a "hidden agenda" against Orthodox Jewish residents.  Ex. 1 at 1–2.

The evidence of discriminatory animus is not limited to Mayor Yagel.  Incredibly, Defendants assert that "Plaintiffs cannot show that Mr. Zummo, the independent official who was actually in a position to delay or deny their CO . . . engaged in discriminatory enforcement of the facially neutral Village Code against plaintiffs based on their religion and out of a discriminatory motivation." Defs. Mem. at 19.  Yet Zummo admitted to the Human Rights investigator that he openly mocked Orthodox Jewish residents by performing "impersonations" of their "carrying on."  Ex. 1 at 4.  Another witness, Village Trustee Robert Klein, reported to the investigator that Zummo told the Village zoning board that it was "just like them" (i.e., Orthodox Jews) to build illegal basement apartments.  Ex. 4 (Interview of Robert Klein) at 33.  And Ms.

5

Shea revealed another incident where he disparaged an Orthodox resident who required a permit to accommodate two severely disabled children, saying that he should "stop having children." Ex. 3 at 17.[1]

On top of this, both Defendant Ulman (the Village attorney) and Zummo have expressly admitted to Mr. Manes that the Village improperly targeted Mr. Manes for discriminatory treatment based on his status as an Orthodox Jew. Manes Decl. ¶¶ 9–10; 19–20; *see also* Nash Reply Decl., Ex. 1 ¶ 43. Zummo stated that Yagel felt "threatened" by the growing Orthodox Jewish population, making comments such as "We don't want this element" or "We don't want them" in reference to Orthodox Jews. Manes Decl. ¶ 10.

In sum, based on the record of the Human Rights Report and Defendants' subsequent statements and admissions, Plaintiff can now easily plead a viable Equal Protection claim based on direct evidence of discrimination under *Pyke*.[2]

---

[1] Since the filing of this motion, Zummo has been named as a defendant in yet another religious discrimination lawsuit brought by Orthodox Jewish residents of Airmont, New York, where Zummo also serves as building inspector. Nash Reply Decl., Ex. 2.

[2] Defendants argue that Plaintiffs should not be permitted to amend their complaint because they did not submit a proposed amended complaint with the motion to vacate. Defs. Mem. at 24. However, the Second Circuit authority they cite in fact says that submission of a proposed amendment is "not required." *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (1990). In *Kurzweil v. Philip Morris Cos., Inc.*, 1997 WL 167043, at *10 (S.D.N.Y. Apr. 9, 1997), Judge Mukasey granted a Rule 60(b)(2) motion, and permitted Plaintiffs "to file an amended complaint including the new evidence and the newly discovered evidence"; there is no indication that a proposed amended complaint was submitted with the motion. Here, Plaintiffs' motion papers set forth in great detail the additional facts with which they propose to supplement their Complaint. Moreover, the motion includes a recently-filed Complaint by another group of Orthodox Jewish residents that relies on the same background facts from the Human Rights Report and subsequent admissions to state Equal Protection Claims against the same Defendants. Manes Decl., Ex. 5.

### B. The Evidence in the Human Rights Report and Defendants' Subsequent Admissions Are Properly Considered On This Motion

Faced with the now-overwhelming record of Defendants' religiously-motivated discrimination against Orthodox Jewish residents of the Village, Defendants urge the Court to shut its eyes to this evidence, arguing that the testimony compiled by the Human Rights Division and Defendants' subsequent admissions are not "admissible" and therefore cannot be considered on a Rule 60 motion. This argument fails because (1) there is, in fact, no "admissibility" requirement where a Rule 60 motion is brought at the pleading stage; and (2) the record on this motion includes sworn testimony and other evidence that would be "admissible" even under the inapplicable standard proposed by Defendants.

As an initial matter, the text of Rule 60(b)(2) imposes no requirement of "admissibility." *See* Fed. R. Civ. P. 60(b)(2) (permitting court to "relieve a party . . . from a final judgment" based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"). The Second Circuit has held that to succeed on a Rule 60(b)(2) motion, the movant must present evidence "of such importance that it probably would have changed the outcome." *Int'l Bhd. of Teamsters*, 247 F.3d at 392. Where the motion is brought after trial, or even a decision granting summary judgment, only "admissible" evidence could possibly "change the outcome." The same is not true at the "motion to dismiss phase – a stage at which all allegations are assumed to be true." *Reese v. McGraw-Hill Cos., Inc.*, 293 F.R.D. 617, 622 n.7 (2013) (declining to consider admissibility of evidence on Rule 60(b)(2) motion brought at pleading stage, but denying motion on other grounds). Thus, there is no admissibility requirement here. *See Kurzweil*, 1997 WL 167043, at *5 (applying motion to dismiss standard to "plaintiffs' newly discovered evidence on a Rule 60(b)(2) motion"); *In re: Stage Presence Inc.*, 2016 WL 3582650, at *5 (Bankr. S.D.N.Y. June 24, 2016)

7

(where dismissal "was based on a deficiency in the pleadings," the "relevant question . . . is not whether the new evidence would result in a 'win' at a subsequent trial, but whether the new evidence would have altered the prior outcome – that is, whether its inclusion in a pleading would have met the requirements of Rule 9(b) and thereby altered the dismissal order").

Notably, Defendants do not point to a single case where a court declined to consider "inadmissible" evidence on a 60(b)(2) motion made after a decision on the pleadings. Rather, Defendants cite cases that apply a standard of admissibility where the final judgment was made on the merits and after the admission of evidence. *See, e.g.*, *Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017) (Rule 60 motion brought following summary judgment); *Armenian Assembly of Am., Inc.*, 924 F. Supp. 2d 183 (D.D.C. 2013) (motion followed judgment entered after bench trial); *Matlock v. Greyhound Lines, Inc.*, 2010 U.S. Dist. LEXIS 92359 (D. Nev. Aug. 10, 2010) (motion followed jury trial). These cases are inapposite here.[3]

Moreover, even if admissibility were relevant at the pleading stage, Defendants' contention that the Human Rights Report and the Defendants' subsequent admissions are not admissible is incorrect. As an initial matter, the Court can take judicial notice of the Human Rights Report. *See Smith v. Westchester Co.*, 769 F. Supp. 2d 448, 457 n.7 (S.D.N.Y. 2011) ("Among the matters of which courts may take judicial notice are decisions of an administrative agency."). And, as noted above, the facts gleaned from the Report must be presumed to be true, as the case is at a pleading stage. *See Kurzweil*, 1997 WL 167043, at *5.

---

[3] *In re Optionable Secs. Litig.*, 2010 WL 3171262 (S.D.N.Y. Aug. 10, 2009) (cited in Defs. Mem. at 11) is not to the contrary. Although the Rule 60 motion there was brought following a motion to dismiss, and relied on "allegations" in civil and criminal complaints filed by the government, the court did not address the issue of whether this evidence was "admissible," and instead denied the motion on other grounds.

In addition, the Human Rights Division investigative file contains independently admissible records, including Ms. Shea's administrative complaint (a sworn, notarized statement) (Ex. 2).  Moreover, the statements of employees and agents of the Village (including Zummo and Defendant Ulman) are admissible under the exception to the hearsay rule for vicarious admissions.  *See* Fed. R. Evid. 801(d)(2)(D).  Moreover, the anti-semitic epithets attributed to Yagel and Zummo "are not hearsay," and would therefore be admissible, "because they are not relied on to prove the truth of the matter asserted, but only to show that the statements were made."  *Fincher v. County of Westchester*, 979 F. Supp. 989, 1005 (S.D.N.Y. 1997).  Thus, although it is not required, Plaintiffs' motion is, in fact, amply supported by admissible evidence.[4]

### C. Plaintiffs' Motion Is Timely

Although Plaintiffs filed their motion to vacate well within the one-year period provided for in Rule 60(b), Defendants nevertheless argue that the motion should be denied because Plaintiffs failed to bring the motion "within a reasonable time of obtaining the evidence which forms the basis of the motion."  Defs. Mem. at 8.  In support of this argument Defendants accuse Plaintiffs of "many months of delay" for which they purportedly have "no excuse."  *Id.* at 9.  But Plaintiffs, in fact, brought their motion promptly within approximately 3 ½ months after receiving the full record of the Human Rights Division investigation.  Nash Reply Decl. ¶ 7.  During that time, Plaintiffs reviewed and analyzed the record (which included the Human Rights Report, witness interview statements, and voluminous emails collected by the investigator), and also conducted their own investigation and interviews of community members.

---

[4] Moreover, to the extent the Court wishes to hear live testimony from any of the witnesses, they can be subpoenaed to appear at a hearing.

*Id.* Plaintiffs should not be penalized for taking a this relatively short period of time to marshal and assess the evidence before bringing a motion to re-open a judgment.[5]

The cases Defendants cite in support of their argument that Plaintiffs failed to move within a "reasonable time" are distinguishable and, if anything, serve to underscore Plaintiffs' diligence here. For example, in *Hamzik v. Zale*, 2008 WL 2073957, at *2 (N.D.N.Y. May 14, 2008), the Plaintiff inexplicably delayed for "nine months" before filing a Rule 60 motion. Moreover, the alleged "newly-discovered evidence" consisted of documents that were actually in Plaintiff's possession all along, and the court concluded he could have located them *before* the judgment was entered by "[e]xercising reasonable diligence." *Id.*, at *1. In fact, Plaintiff's argument in his Rule 60 motion suggested that he had located the documents prior to entry of the judgment, but made a tactical decision to hold on to them with the expectation of presenting the documents at oral argument. Nothing remotely like this happened in this case.

Similarly, in *Henriquez v. Astrue*, 499 F. Supp. 2d 55 (D. Mass. 2007), Plaintiff was aware of the "evidence" on which the motion was based (a disability ruling by the Commissioner of Social Security that contradicted an earlier ruling) "two months *before*" entry of the judgment. Her attorney admitted he had learned of the ruling "in time to move for a new trial" under Fed. R. Civ. P. 59(b), but failed to do so. *Id.* at 57. And, unlike in this case, there was no factual record for Plaintiff or her counsel to review and assess: the new "evidence" was simply the

---

[5] In support of their timeliness argument, Plaintiff complain of "immense prejudice" if they are "forced to defend against a reopened lawsuit." Defs. Mem. 9. But a defendant is required to "defend against a reopened lawsuit" any time a Rule 60 motion is granted. Defendants do not identify any unique prejudice they face here – and certainly not any prejudice they suffered during the 3 ½ months Plaintiffs took to review the record, develop their arguments and prepare the motion. In fact, given that Plaintiffs' complaint was dismissed on a pleading motion, and before any discovery, any prejudice to Defendants is especially minimal.

10

existence of a contradictory administrative decision that could have been submitted to the Court immediately with minimal discussion or analysis.

Thus, Plaintiffs' Rule 60 motion is timely.

## II. THE ORDER AND JUDGMENT SHOULD BE VACATED BASED ON DEFENDANTS' MISCONDUCT IN FAILING TO PRODUCE PUBLIC RECORDS REGARDING COMPARATORS

In their opening papers, Plaintiffs demonstrated that they are entitled to relief from the Judgment under Fed. R. Civ. P. 60(b)(3), based on Defendants' misconduct in failing to provide public land and building records in response to Mr. Manes' FOIL requests to support his selective enforcement claim. Defendants' counterarguments are unavailing.

*First*, Defendants contend (incorrectly) that Rule 60(b)(3) requires "severe misconduct, comparable to fraud." Defs. Mem. at 23. In fact, no showing of fraud is required: "even an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)."[6] *Catskill Dev., LLC v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 314–15 (S.D.N.Y. 2003) (McMahon, J.).

*Second*, Defendants purport to fault Plaintiffs for relying on mere "allegations that the Village did not properly respond to Mr. Manes' FOIL requests, not proof." Defs. Mem. at 20. But Plaintiffs, in fact, rely on proof in the form of testimony (including a sworn declaration) from Ms. Shea, who has personal knowledge regarding the Village's record-keeping and document retrieval policies and practices, as well as admissions from Zummo.

---

[6] Defendants assert that even a willful failure to respond to a FOIL request can only support a Rule 60(b)(3) motion if the underlying litigation concerns the FOIL request itself. Defs. Mem. at 22. This argument is nonsensical. The focus on a Rule 60(b)(3) motion is whether the defendant engaged in "misconduct" that "prevented the moving party from fully and fairly presenting his case." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (quotation marks and citation omitted). Defendants offer no principled reason why FOIL requests should be treated any differently than a discovery request in litigation for this purpose.

11

*Third*, Defendants suggest that Plaintiffs ought to have "discovered the information on which they now rely to support their claim of misconduct at the time of the dismissal" of the Complaint, since Plaintiffs knew all along that they had not received responses to their FOIL requests. Defs. Mem. at 21. Defendants ignore that it was Human Rights Report, and information Ms. Shea and Building Inspector Zummo revealed after its issuance, which showed that Defendants were ultimately responsible for Mr. Manes' inability to access the relevant records.

## CONCLUSION

For the reasons stated above, and in the opening papers, Plaintiffs' motion for relief from the Order and Judgment should be granted, and Plaintiffs should be permitted to file an Amended Complaint incorporating the newly-discovered evidence, and to add new claims for additional acts of discrimination.

Dated: January 17, 2019
      New York, New York

                    Respectfully submitted,

                    **SCHLAM STONE & DOLAN LLP**

                    By:   /s/
                         Bradley J. Nash
                         26 Broadway, 19th Floor
                         New York, NY 10004
                         Phone: 212-344-5400
                         Fax: 212-344-7677
                         E-mail: bnash@schlamstone.com

                         *Attorneys for Plaintiffs TAL Properties of Pomona, LLC and Avrohom Manes*