# Exhibit 1

COUNTY OF ROCKLAND
------------------------------------------------------------------------X
TAL PROPERTIES OF POMONA, LLC,

                      Plaintiff,

- against -                                **REPLY AFFIRMATION**

VILLAGE OF POMONA, DORIS F. ULMAN, Individually and as Attorney for the Village of Pomona, BRETT YAGEL, Individually and as                     Index No. 031216/2017
Mayor of the Village of Pomona, LEON HARRIS, Individually and as Deputy Mayor of the Village of Pomona, IAN BANKS as Trustee of the Village of Pomona, ALMA SANDERS ROMAN, as Trustee of the Village of Pomona, NICHOLAS WILSON, as Trustee of the Village of Pomona, LOUIS ZUMMO, as Building Inspector of the Village of Pomona, and P. JOSEPH CORLESS,

                      Defendants.
------------------------------------------------------------------------X

ESTHER NOE ENGELSON, ESQ. an attorney duly admitted to practice law in the State of New York affirms under penalty of perjury as follows:

1. I am attorney for Plaintiff Tal Properties (hereinafter "Plaintiff") and as such I am fully familiar with the facts and circumstances stated herein.

2. I submit this Reply Affirmation in Support of Plaintiff's Motion for Summary Judgment (hereinafter "MSJ") filed on September 27, 2018.

3. Defendant's main argument in his opposition papers is that Plaintiff failed to prove that Defendant has maintained and repaired the roads and has taken charge of the roads for a continuous period of at least ten years. Defendant's argument is based on the following claims: 1) certain years are not presented in the work orders attached to the MSJ and, therefore, Plaintiff has failed to establish that Defendant has continuously maintained and repaired the road; 2) work orders that were presented are discounted because the maintenance and repairs were completed for safety or snow removal purposes; 3) Plaintiff

1

did not establish dominion and control of the roads; and 4) case law that Plaintiff has relied on is incongruous to the matter at hand. Defendant's claims are meritless.

### A. THE WORK ORDERS, THE TOWN OF HAVERSTRAW'S LIST OF ROADS AND OTHER EXHIBITS, ESTABLISH THAT DEFENDANT HAS MAINTAINED AND REPAIRED THE HO ROADS CONTINUOUSLY FOR AT LEAST TEN YEARS.

4. First and foremost, Exhibit L – comprised of approximately sixty work orders - attached to the MSJ establishes that Plaintiff has been the sole entity in charge of the HO roads and that it has maintained and repaired the roads for at least ten years. Defendant argues that the work orders are inconclusive as there are no work orders for the years – 2008 through -2011. Specifically, Defendant claims that of the thirteen work orders issued by the Town of Haverstraw Highway Department, in 2008-2011, three work orders show that the Town of Haverstraw only repaired berms "presumably damaged by snowplows" and the other work orders show that Defendant repaired signs for safety reasons. See Opp. at ¶ 6. P. 4.

5. Defendant's claims are incorrect, as Exhibit L also establishes that in the summer of 2008, the Town of Haverstraw had also swept the streets of the entire village, an act that is completely unrelated to safety or to snow plows.

6. To refute the claims that from 2008 until 2011, Defendant has only repaired berms and signs in an effort to ensure the safety of its inhabitants, Mr. Frank Brooks, former Superintendent for the Highway Department of the Town of Haverstraw avers to the following: that the Town of Haverstraw (via a service agreement with Defendant) has regularly maintained and repaired the roads from 1999 through 2011, the years in which he was Superintendent, and that it regularly swept the streets of the entire village. See Exhibit A, attached hereto; see also Feldmeier v. Feldmeier Equip. Inc., 164 A.D.3d 1093 (4th Dep't 2018) (In reply, defendants properly submitted evidence, including an expert

2

affidavit, that provided the very explanations that plaintiff contended were lacking and refuted the factual underpinnings for the opinions of plaintiff's expert).

7. Moreover, the Affidavit establishes that not only were the HO roads maintained and repaired for the past ten years, but that the roads were maintained and repaired from 1999- until 2009, as well, another period of ten continuous years, which certainly meets the standard for prescriptive dedication outlined in Highway Law §189 and Village Law §6-610.[1]

8. Defendant's claims are refuted by the attached Affidavit and by statements in which Defendant concedes that it "it is reasonable to assume that the Highway Department took no action on the other work orders because High Mountain and Overlook were known to be undedicated roads" and further notes that it is presuming that the berms were repaired due to damage by the snow plow. See Opp., P. 6. Notably, Defendant uses the words "presumably" and "assume" as that is precisely what Defendant is doing -- presuming and assuming. Opp. P. 6.

9. However, one cannot presume that the berms all needed repair due to a snow plow and one cannot assume that the work orders were not completed as there are no evidentiary facts included to counter the work orders. One would expect that Defendant would send a letter to the complainant requesting a repair that it could not complete the work order due to the undedicated nature of the roads. One would also assume that Defendant would send a letter to the Town of Ramapo or Haverstraw stating that it was barred from working on the

---

[1] The documentary evidence establishes that Defendant repaired and maintained the roads for each and every single year of the entire continuous period of ten years. However, it should be noted that <u>Marchand v. New York Dept. of Envtl. Conservation</u>, 19, N.Y.3d 616 (2012) does not require proof of repair for every single year. Instead the New York Court of Appeals, reaffirmed its prior holdings by stating that - a road is not public unless the public takes responsibility for maintaining and repairing it. There is no caveat that every year had to be proven.

3

numerous orders it had been receiving. No such evidence was attached, nor any other evidence to support Defendant's claims. As such, Defendant failed to produce evidentiary proof that a material issue of fact exists and, thus, summary judgment should be granted.

10. A proponent of a summary judgment motion must make prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. See Winegrad v. New York Univ. Med. Center, 64 N.Y.2d 851, 853 (1985); Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980). Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action. Zuckerman v. City of New York, 49 N.Y.2d at p. 562 (1980).

11. Defendant was required to meet the burden of producing evidentiary facts to counter Plaintiff's evidentiary facts. Notwithstanding this requirement, Defendant did not submit any evidentiary facts which support its assertion that Defendant or any related municipality did not regularly maintain and repair the HO roads and the disputed roads in the subdivision.

12. Defendant did submit the deposition of Anthony Sharan, the former Superintendent of the Town of Ramapo Highway Department. In the excerpt attached as Exhibit B to the Opp., Mr. Sharan conceded that the Town of Ramapo did maintain the roads and agreed to the work orders presented at the deposition, but only for safety reasons. Not only does this assertion fail to refute the facts outlined in Plaintiff's MSJ and in the Affidavit attached hereto, but it also buttresses the fact that the disputed roads were maintained and repaired by a municipality, and not by private home owners.

13. In accordance with Mr. Sharan's claims, Defendant argues that the repairs done were only for safety measures. See Opp. P. 5. It is irrelevant whether maintenance and repair is done due to safety reasons or aesthetic reasons. Had Defendant thought it was necessary to complete maintenance and repairs due to emergent safety reasons, it should have included in its declaration of emergency, issued in the years in 2011/2012 and in 2015, (Opp., at reasons. It failed to do so because Defendant had regularly maintained the roads, through the services of the Town of Haverstraw and Ramapo, and whether the conditions were unsafe or unflattering is immaterial to the fact that the roads were maintained or repaired.

14. Indeed, safety of the inhabitants is precisely what maintenance and repair is all about. Village Law § 4-412 states that the board of trustees may take all measures and do all acts, which shall be deemed expedient or desirable "for the protection of its property, the safety, health, comfort, and general welfare of its inhabitants." It is the obligation of Defendant and its board to protect its inhabitants and maintenance and repair falls within the penumbra of that obligation.

15. Defendant attempts to dismiss approximately sixty work orders and preposterously argues that out of all the work orders presented only one repair is applicable. [2]Defendant does so in an effort to absolve itself of the responsibility to currently pave the roads. Nonetheless, Defendant cannot be absolved of that role considering the abundance of evidence which shows that Defendant regularly maintained and repaired the roads and, as such, the roads are dedicated by prescription.

---

[2] Interestingly, in the Reply to Defendant's prior Motion for Summary Judgment, Defendant agrees that there has been intermittent work done over the course of five years based on sixteen work orders presented (Defendant's Motion for Summary Judgment, p. 6) a small fraction of the evidence presented in this matter.

16. In accordance with the powers vested in the Village, Defendant by its agents, the Towns of Ramapo and Haverstraw regularly maintained the disputed roads, including work that far exceeded emergency services. Some examples of work orders are: removal of trees, removal of dead animals, repair of signs, repair of wash out, removal of debris, repair of mailboxes, replacement of curb cap, and repair of blacktop. All of these repairs fit squarely within all of the maintenance listed on the service request sheet provided by the Town of Haverstraw. Similarly, all of the requests fit squarely within the description of the maintenance services provided by the Town of Ramapo. Attached hereto as Exhibit B are the lists and descriptions provided by the respective Towns.

17. Defendant also asserts that there are no work orders for the year of 2013. That claim is belied by the record as there are four work orders issued in 2013: Moreover, there are road evaluations issued in 2013 which establish that roads were maintained by the Town of Ramapo and the index of roads which are public and private, which was used in 2013, as well. See Exhibit CC to MSJ and Exhibit C attached hereto.

18. Defendant also attempts to dismiss the work orders as some work was done on other undedicated roads in the subdivision. That argument is unfounded as the repair of the undedicated roads in the area are very relevant to the repair of the HO roads. Plaintiff has never asserted that it is only the HO roads which were getting special treatment in terms of maintenance and repair. It is all of the roads, in the subdivision which have not yet been dedicated that were on the receiving end of the maintenance and repair of the roads.

19. Furthermore, Plaintiff attempts to dismiss Exhibit K which lists all the public and private roads in the Towns of Ramapo and Haverstraw, by stating that it is unsigned and undated. Defendant's claim is without merit as the documents are admissible under C.P.L.R. § 4518,

the business record exception to the hearsay rule. Interestingly, Defendant has attached as Exhibit D, a list of public and private roads by the New York Department of Transportation which remains unsigned and undated as well. That is because the list is admissible under the business record exception, although not dispositive of the matter at hand.[3] Moreover, this form was in direct response to a FOIL request, dated August 1, 2018, and attached hereto as Exhibit D.

20. Once again Plaintiff attempts to dismiss this entire exhibit, as that list is really at the crux of the case and that is whether these roads have been deemed by private or public by the municipality. This list establishes clearly that the HO roads are being maintained and repaired by the Town of Ramapo in accordance, with other exhibits which support that conclusion.

21. In any event, in response to Defendant's claim, George Wargo, the current Superintendent of the Village of Haverstraw has signed the business record and added that this list is the list in use since he became Superintendent in 2013. See Exhibit C attached hereto.

22. As such, dedication by prescription is established without a question of fact, based on the following: 1) approximately sixty work orders establishing that the disputed roads were maintained and repaired; 2) attached affidavit of Frank Brooks, former Superintendent of the Town of Haverstraw; 3) the comprehensive list of roads which are maintained by the

---

[3] The New York Department of Transportation list of roads is not conclusive as to establish whether the roads are public or private. In Kingsley v. Village of Cooperstown, 107 A.D.3d 1092 (2d Dep't 2013), the court found that the fact that the disputed roads in that case were not listed on the inventory of roads supplied by the New York Department of Transportation, did not preclude a finding of prescriptive use. Similarly, while the disputed roads in the case are not listed in the New York Department of Transportation list, the list issued by the Town of Haverstraw is far more determinative as to whether the disputed roads were actually maintained.

Towns of Ramapo and Haverstraw which index roads that are private and public, 4) road evaluations and violations issued for public signs and parking on the disputed roads.

### B. THE ONUS OF PAVING OF THE ROADS FOR DEDICATION PURPOSES IS ON DEFENDANT

23. Defendant also fails to respond to the argument that because the former developer of the roads posted letters of credit, it was Defendant who was responsible for the pavement of the roads, pursuant to Village Law 118(13)(d). Defendant failed to refute that claim and that is because as a matter of law, it is Defendant who was and continues to be responsible for the financing of the road pavement and its ultimate dedication.

24. To date, Defendant took another bond from Lue Development and as such, it has only confirmed that it the onus of paving the disputed roads is no Defendant. As such, any claims that Plaintiff owns the roads and is responsible for paving the roads, are completely without merit.

### C. THE CASES DEFENDANT CITES IN SUPPORT OF ITS CLAIMS ARE INAPPOSITE.

25. Defendant cites to <u>Long Pond Assc. Inc, v. Town of Carmel</u>, 87 A.D.3d 525 (2d Dep't 2011) to establish that intermittent maintenance and repair is not sufficient to establish prescriptive use. Sixty pages of work orders, a list of public and private roads, road violations and inspections, and an affidavit by the former Superintendent establish that the maintenance and repair of the roads were regular and not intermittent. Besides, the <u>Long Pond Assc.</u> case involves roads that were not used by the public and as such the first prong of the <u>Marchand</u> test had not been met. <u>See</u> Affirmation in MSJ ¶ 15. In contrast, here Defendant concedes that the roads are public. Furthermore, the evidence in this matter, exceeds the evidence presented in <u>Long Pond Assc.</u>, as that case involved emergency

8

services <u>alone</u> relating to snow. Here, Defendant had maintained and repaired the roads for matters unrelated to snow.

26. Defendant also states that says that <u>Whitton v. Thomas</u>, 25 A.D.3d 996 (3d Dep't 2006) and <u>Pinsley v. Town of Huntington</u>, 81 A.D.3d 910 (2d Dep't 2011) do not support Plaintiff's position as the town in <u>Whitton</u> had included the roads in its inventory of maps. To the contrary, <u>Whitton</u> is right on point as the Town of Haverstraw, a local municipality, includes the HO roads in its list of roads to be maintained and repaired by the Town of Ramapo. <u>Pinsley</u> is also directly on point as the Appellate Division, Second Department held that there was prescriptive dedication of the roads, even when the roads were short, dead end roads, and there was far less of maintenance and repair than the work done in the case at bar.

27. In any event, parsing through every work order in an effort to dismiss the work orders or find gaps in time, is incorrect as a broad and expansive analysis to the evidence establishes that it was Defendant and its agents who have been maintaining and repairing the roads for at least ten years. See <u>Marchand v. New York State Department of Environmental Conservation</u>, 19 N.Y.3d at 616 (2012).

28. Defendant cites to <u>Marchand</u> in support of its claim that prescriptive dedication should be denied. However, in that case, the property owners of private roads were attempting to preserve the private nature of the roads. In sharp contrast, here the property owners were pleading that the roads be dedicated for their benefit. Exhibit JJ to MSJ.

29. McQuillin, in Laws of Municipal Corporations, 33:58(3d), the landmark authority on the law of local municipalities, states the following: In those cases where it appears that the property would not be beneficial to the public, stronger evidence of acceptance will be

9

required than if it appears that the property would be beneficial. In other words, should the dedication appear beneficial and convenient to the public, acceptance will be implied from slight circumstances. See also, Village of Mamaroneck v. Craig, 52 Misc. 3d 1215 (Sup. Ct. Westchester County 2016).

30. Here, Defendant asserts that the disputed roads were maintained and repaired for safety purposes alone. As such, even if assuming *arguendo*, that the evidence was tenuous, based on Defendant's assertions alone this Court should find that the roads are dedicated by prescription. However, the fact is that the evidence is abundant and, therefore, reliance on McQuillin is not necessary but certainly dispositive of the need to declare that the roads are dedicated.

D. DEFENDANT WAS IN CHARGE OF THE HO ROADS, AS PER MARCHAND.

31. As to the issues of dominion and control, once again Defendant attempts to dismiss each and every exhibit by claiming the exhibits are not pertinent to the HO roads and "that most of exhibits have nothing to do with the subject roads or the Village of Pomona." Opp. P. 6. As explained earlier in ¶ 18, Plaintiff's argument is unfounded as dominion and control of all the undedicated roads in the subdivision, serve to emphasize that Defendant was in charge of the HO roads.[4] That is why Exhibit AA to the MSJ is pertinent as it establishes that Defendant was accepting bonds to ensure that the undedicated roads, such as Riverview Court, remain intact. Similarly, Exhibit S to the MSJ establishes that Defendant has been maintaining the entire subdivision for over forty-five years.

---

[4] Interestingly, Defendant now argues that examples of dominion and control and the work orders for other disputed roads should not apply when it consistently is arguing that the roads belong to Plaintiff even though it only owns seven lots on the disputed roads, and there are hundreds of property owners on the roads who have not been targeted as owners of the roads.

10

32. Additionally, violations for signs on public property, issued as recently as January 2018, indicate that the roads are indeed public and controlled by Defendant. Exhibit BB, to the MSJ. As Pomona Village Law §112-3 prohibits signs on public property, the violations issued could only have been issued on public roads, establishing that the HO roads and the surrounding undedicated roads were public roads.

33. Moreover, Defendant attempts to discount Exhibit CC on the grounds that the road evaluations were not issued by Defendant, but by the Town of Ramapo. That claim is incorrect as Defendant had contracted with the Town of Ramapo to service the roads and the road evaluations are part of the process of maintaining the roads. The list explicitly states that High Mountain Road is slurry while it expressly indicates that Woolf Road, is an undedicated road. Indeed, Defendant in its Opp. P. 8, ¶ J, states that Woolf Road is a private road. In contrast, the evaluation report does not state that High Mountain and Overlook Road are undedicated, rather it proceeds to evaluate the roads as it did with all the other dedicated roads on the list.

34. Furthermore, there are many other exhibits attached to the MSJ which establish Defendant, had controlled the disputed roads: sewage logs issued by the Joint Regional Sewage Board, Exhibit N[5]; mail routes indicating public nature of the roads, Exhibit EE; school bus routes including the disputed roads, Exhibit FF; and letters to property owner on the disputed roads prohibiting the owner from erecting a fence on the disputed roads.

---

[5] While Defendant dismisses Exhibit O, which shows that Defendant taxes property owners for sewer services, it was only included to preempt Defendant's argument that it is not in charge of the Sewer Board. Indeed, Exhibit O demonstrates that Defendant levies a tax on property owners for the sewer system; is involved in the sewage of all roads within the Village of Pomona; and is in dominion and control of the disputed roads.

35. Defendant failed to counter these exhibits with any documentary evidencing establishing that another entity had, in effect, dominated and controlled the disputed roads. As such, Defendant did not meet its burden of proof. Zuckerman v. City of New York, 49 N.Y.2d at 562 (2010).

36. Defendant also asserts that Gran Fondo is a private organization that sponsors bicycle events each year and that the event has no bearing on its control of the disputed roads. What Defendant fails to mention is that Plaintiff did not give Gran Fondo permission to ride on the roads. Nonetheless, Village minutes have established that Defendant granted Gran Fondo access to the bike routes – which include the HO roads – and in fact, the annual bike event has the riders riding on the HO roads --another example of dominion and control.

E. DEFENDANT'S CLAIM THAT PLAINTIFF OWNS THE ROADS IS INCREDULOUS.

37. Defendant claims that Plaintiff owns the roads pursuant to a common clause appearing in residential contracts and deeds, which refers to "land lying in the beds of the followings streets." See Opp. at Exhibit F. That phrase does not grant Plaintiff, who owns seven lots on a road which spans at least one hundred lots, with ownership of the road. Defendant is well aware that the clause and similar clauses appears in many other deeds, and that those clauses do not transfer ownership of the roads to the purchaser of a lot.

38. Defendant even went so far as to request reimbursement for snow removal; although it has yet to provide receipts of payment for snow removal on the disputed roads, despite numerous demands that Defendant do so.

39. One can only understand this preposterous claim in the context of a bigger picture in which Defendant is engaged in a strategic plan to stop Orthodox Jews from buying property in the mountain in Pomona.

40. Plaintiff is an Orthodox Jew and the anti-Semitic, discriminatory tactics levied by Defendant against this group is well documented in a motion brought in United States District Court, Southern District requesting relief based on newly discovered evidence, that demonstrates that Defendant had consistenly discriminated against Plaintiff and had prevented him from receiving documents in response to his numerous FOIL requests. A copy of the motion is attached hereto as Exhibit E.

41. Similarly, another case was brought in the United States District Court, Southern District, by Samuel Indig, Meir Kahane, and Robert Klein, property owners in the Village of Pomona, against Defendant. The lawsuit alleges that Defendant's anti-Semitic acts consisted of the following: 1) enacting unconstitutional new zoning laws and practices; 2) pretextual delays and denials of permits and certificates of occupancy to Jewish homeowners and developers; 3) harassing real estate brokers (and their customers) known for selling to Orthodox clients; 4) targeting Jewish-owned residences for selective enforcement of code violations – for example, executing pre-dawn Saturday morning ticketing blitzes (referred to by Yagel as "shul patrols"); and 5) accepting and encouraging deranged and blatantly anti-Semitic "complaints" from non-Jewish residents as legitimate justifications for intrusive inspections and harassment. A copy of the Complaint is attached hereto as Exhibit F.

42. Indeed, during the course of a deposition in this case, Defendant's attorney Doris Ulman conceded, in an off the record conversation, that there had been discriminatory acts administered by Defendant and its Mayor; that certain resident's lives were made miserable by Defendant's discriminatory tactics; and that Ms. Ulman had resigned from the Zoning Board because of those tactics.

43. Moreover, at that same deposition, Ms. Ulman admitted that the Village board of trustees targeted Plaintiff, by pursuing a claim that Plaintiff is responsible for maintaining and repairing the roads and not any prior owners. <u>See</u>, Exhibit G. Additionally, as stated earlier, Defendant did not make such claims against the other one hundred property owners on the disputed roads. Clearly, the claim that Plaintiff is an owner of the roads, is simply one of many obstructive actions aimed at keeping the Orthodox Jews out of this picturesque area.

44. The plan to pin ownership on Plaintiff became apparent after Plaintiff obtained documentary evidence from sources other than Defendant. In fact, despite numerous FOIL requests and discovery demands, Defendant never produced any documents relating to the maintenance and dominion and control on the disputed roads.

F. <u>CONCLUSION</u>

45. Considering the ample evidence attached to the MSJ, the Affidavit by Frank Brooks, the index listing public and private roads, the violations and evaluations, and Defendant's failure to rebut the Motion with any documentary evidence establishing that it did not maintain or repair and dominate and control the HO roads, this Honorable Court should grant Plaintiff's Motion for Summary Judgment and declare that the roads were dedicated by prescription, and that the onus of paving the roads rests solely with Defendant.

WHEREFORE, it is respectfully requested that this Motion for Summary Judgment be granted together with such other relief, including costs of this motion and attorneys' fees and any relief this Honorable court deems just and proper.

Dated:      Suffern, New York
               November 9, 2018

                                                 Esther Noe Engelson